# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-02126-SCT

*GWENDOLYN E. BALL, J. NEIL VARNELL AND*
*SARGE PRESTON*

*v.*

*MAYOR AND BOARD OF ALDERMEN OF THE*
*CITY OF NATCHEZ, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/17/2006 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES A. BOBO |
| | MICHAEL E. D'ANTONIO, JR. |
| ATTORNEY FOR APPELLEE: | WALTER BROWN |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED; ON CROSS-APPEAL: AFFIRMED - 04/10/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     This appeal stems from the sale of surplus land in the City of Natchez (City). The City sold the surplus land, known as the Natchez Pecan Factory Site, to Worley Brown LLC, pursuant to Mississippi Code Annotated Section 57-7-1, for the development of a portion of the Waterfront Development District. Gwendolyn E. Ball, J. Neil Varnell, and Sarge Preston (collectively the "appellants"), City residents, appealed the January 24, 2006, and May 30, 2006, actions taken by the mayor and the board of aldermen to the Circuit Court of Adams

County, Mississippi, in regard to the extension of an option contract and the execution on the special warranty deed to Worley Brown. The two appeals were consolidated by the trial court. The trial court determined that: (1) it had jurisdiction to hear the appeal; (2) the appellants had standing to pursue the appeal; (3) the actions of the mayor and board were authorized by Mississippi Code Annotated Section 57-7-1; (4) the development was commercial within the meaning of Mississippi Code Annotated Section 57-7-1; (5) the extensions of the option agreement were reasonable and necessary and did not violate any statutory or constitutional rights; (6) all of the meetings conducted by the mayor and board were legal; (7) the sale price of the property was reasonable; (8) any restriction of access by the general public of the existing sidewalk and walkway was unreasonable; and (9) any remaining issues were resolved against the appellants. Following the trial court's ruling, the appellants filed a notice of appeal, and the City filed a notice of cross-appeal on the issues of jurisdiction, standing, and sidewalk access.

## FACTS

¶2.    In 1995, the City received a donation of 2.88 acres of land located on the bluff-top area of Broadway Street. The property was known as the Natchez Pecan Factory Site. In 2005, the mayor and the board received requests from various developers concerning the sale and development of the Natchez Pecan Factory Site. In April 2005, the city council prepared a "Request for Proposals" for fourteen prospective developers. The City received five proposals, with proposed sale prices between $275,000 and $650,000. Notices concerning the solicitation process, and the receipt and consideration of the proposals were published in

2

*The Natchez Democrat* six times over the course of six weeks. The board chose the development proposal of Worley Brown on June 28, 2005.

¶3. On August 9, 2005, the city council unanimously adopted a resolution to enter into a option/development agreement with Worley Brown. In addition, the resolution provided, in part, that (1) the City determined the property to be surplus, (2) the property was to be sold pursuant to Mississippi Code Annotated Section 57-7-1, and (3) the mayor had authority to execute a deed of conveyance, transferring the property to Worley Brown. There was no appeal by any party of the city council's actions.

¶4. The option agreement adopted at the August 9, 2005, meeting provided that the option would expire on February 9, 2006, at 5 p.m. The option agreement further provided that the City and Worley Brown had to comply with all city, state, and federal statutes, rules, and regulations, including the regulations of the Mississippi Department of Archives and History. The option agreement stated that the purchaser would develop seventy-five residential, luxury condominium units with a clubhouse, swimming pool, and other facilities. The purchase price for the property was $500,000.

¶5. On January 23, 2006, Worley Brown requested an extension of the option agreement due to a delay in receiving a permit from the Department of Archives and History. On January 24, 2006, at a regular meeting, the city council adopted a resolution to extend the option agreement for thirty days. The appellants filed a notice of appeal and bill of exceptions on February 3, 2006, concerning the option agreement. On March 9, 2006, the Department of Archives and History gave approval for the project via its permit committee. The city council granted further extensions of the option agreement at the request of Worley Brown.

3

On May 22, 2006, Worley Brown gave notice to the mayor that it wished to exercise the option, requesting a closing date. On May 30, 2006, the mayor executed and delivered a special warranty deed to Worley Brown for the Natchez Pecan Factory Site property. The appellants filed a notice of appeal on June 8, 2006, concerning the actions taken by the mayor and the board at the May 30, 2006, meeting. Thereafter, the trial court consolidated the two appeals filed on February 3 and June 8, 2006, and issued its ruling.

### DISCUSSION

¶6. On cross-appeal, the City raises a number of issues, two of which are jurisdiction and standing. Since these two issues are fundamental barriers for any appeal to be considered by this Court, they will be addressed before any issue raised by the appellants.

### 1. Jurisdiction.

¶7. The City argues that the circuit court and this Court have no jurisdiction to hear this case. At the August 9, 2005, city council meeting, the mayor and board unanimously adopted a resolution to enter into an option development agreement with Worley Brown for the sale and development of the Natchez Pecan Factory Site. At the May 30, 2006, city council meeting, the mayor executed and delivered the deed of conveyance to Worley Brown. The City concedes that the appellants filed a timely notice of appeal from the May 30, 2006, city council meeting. *See* Miss. Code Ann. § 11-51-75 (Rev. 2002). However, the City contends that the circuit court and this Court have no jurisdiction, as the council took no action at its May 30, 2006, meeting in regard to the sale of the Natchez Pecan Factory Site. The City contends that the mayor had prior authority to execute and deliver the deed pursuant to the August 9, 2005, resolution. Further, the City argues that no appeal was taken from the actions

4

taken at the August 9, 2005, city council meeting. The City contends that the circuit court and this Court have no jurisdiction because the August 9, 2005, meeting gave the mayor authority to execute and deliver the deed on May 30, and no action was taken by the city council.

¶8. Mississippi Code Annotated Section 11-51-75 provides for ten days to appeal from the date of adjournment of a session in which a board of supervisors or municipal authorities render a judgment or decision. Miss. Code Ann. § 11-51-75 (Rev. 2002); *see* **Newell v. Jones County**, 731 So. 2d 580 (Miss. 1999). The ten-day appeal period from the actions of a board or municipal authority is mandatory and jurisdictional. ***Bowen v. DeSoto County Bd. of Supervisors***, 852 So. 2d 21, 23 (Miss. 2003); ***City of Madison v. Shanks***, 793 So. 2d 576, 581 (Miss. 2000).

¶9. In effect, the City argues that the unanimous adoption of the resolution provided the mayor with authority to execute and deliver the deed to Worley Brown. Therefore, any objection to the sale of the land should have been made in an appeal within ten days of the August 9 adoption of the resolution. In order to determine whether the August 9 adoption of the resolution was a final, appealable act by the mayor and the board, this Court must examine what constitutes a final act.

¶10. This Court has considered when the actions of a municipality become final. In ***Sanford v. Board of Supervisors, Covington County***, 421 So. 2d 488, 490 (Miss. 1982), this Court found that an order by the board was not a final decision. The order stated, in part, that two members of a committee were appointed to lay out a road and report their findings at the next board meeting. *Id*. at 489. This Court found that the language of the order required only a "finding" and failed to show that a final decision was made to construct the road. *Id*. at 490.

5

In *City of Madison*, this Court held that a mayor's veto was final when the board decided not to override the veto at a later session. *City of Madison*, 793 So. 2d at 581.

¶11. Indeed, this Court also has addressed the period for appeal of the sale of municipal properties. In *Coast Materials Co. v. Harrison County Development Commission*, 730 So. 2d 1128, 1131 (Miss. 1998), this Court held that appellants timely appealed the sale of municipal land. The Harrison County Board of Supervisors ratified the sale of a parcel of land in an industrial district by the Harrison County Development Commission to Delta Industries. *Id*. Later, the Board substituted and sold a second parcel of land in the same industrial district in lieu of the first parcel of land. *Id*. The Court found that the sale of the second piece of property was the final, appealable act of the municipality, not the initial sale of the first parcel of land. *Id*.

¶12. In *Garrard v. City of Ocean Springs*, 672 So. 2d 736, 739 (Miss. 1996), this Court considered the language of a motion to determine whether the actions of the city council constituted a final disposition. This Court held that the clear and unambiguous language of the city council's motion to transfer was a final disposition of all issues. *Id*. at 738-39. However, the Court also found that, had the language of the motion been similar to the first motion, which contained conditional language concerning the removal of a hut, then the motion would not have been a final disposition. *Id*.

¶13. However, in *Hinds County Board of Supervisors v. Leggette*, 833 So. 2d 586, 591 (Miss. Ct. App. 2002), the Court of Appeals determined that the circuit court had subject matter jurisdiction to hear the appeal where all actions by the zoning administrator were not complete. The Court of Appeals determined that the actions of the board constituted a final

6

judgment or decision because it "'RESOLVED AND ORDERED' the Zoning Administrator to take legal action in an appropriate court of law to seek the removal" of a horse arena on Leggette's property. *Id*. Interestingly, the Court of Appeals found that "[e]ven though the Board did not actually arm the Zoning Administrator with a bulldozer and a hard hat," the board's order was a final, appealable order. *Id*.

¶14. On August 9, 2005, the mayor and board unanimously adopted a resolution for the sale and development of the Natchez Pecan Factory Site. The minutes of the regular meeting on that date stated:

> A motion was made by Alderman West and seconded by Alderman Pollard to adopt a resolution to enter into an option development agreement with Worley Brown, LLC for the sale and development of the city-owned Pecan Shelling Factory Site on Broadway Street. The motion carried unanimously.

The resolution was for the sale of the property for $500,000. Further, the resolution stated, in part:

> BE IT FURTHER RESOLVED that Mayor Phillip West and City Clerk Donnie Holloway of the City of Natchez are hereby authorized, empowered and directed to execute all documents required to consummate the transaction including that Option/Development Agreement attached hereto as Exhibit "A" and upon the proper and timely exercise of the notice required under the Option/Development Agreement to execute a deed of conveyance transferring the City's interest in the aforesaid real property in accordance with the Special Warranty Deed with Declaration of Covenants incorporating the terms and conditions of the aforesaid Option/Development Agreement, which terms and conditions are incorporated herein and made a part hereof for any and all purposes.

¶15. Based on our precedent, while the vote for the resolution to extend an option agreement for the sale and development of the property was a final disposition of the resolution, it was not a final disposition of all the issues for various reasons. First, the language of the option

7

agreement may be interpreted to be conditional in nature, and therefore, not a final disposition of the issues.[1] *Garrard*, 672 So. 2d at 738-39. The terms of the resolution stated that the mayor may convey the property "upon the proper and timely exercise of the notice required under the Option/Development Agreement to execute a deed of conveyance transferring the City's interest in the aforesaid real property." The option agreement provided for a February 9, 2006, deadline to accept the option agreement and for closing within fifteen days of the exercise of the option. The agreement contained no provision for an extension of the option agreement.

¶16. Worley Brown did not sign the option agreement prior to February 9, 2006. Rather than accept the option within 180 days pursuant to the terms of the option agreement, Worley Brown requested an extension of the option agreement period on January 23, 2006. The City granted a thirty-day extension for the option agreement on January 24, 2006. This extension was outside the terms of the option agreement, and thus, was akin to a new agreement with Worley Brown.

¶17. In addition, the execution of the deed on May 30, 2006, by the mayor to Worley Brown was an appealable action. The board and the mayor voted for numerous extensions of the option agreement between January and May 2006. The option agreement never provided for these extensions. Therefore, the extensions by the city council acted as renewals of the option agreement. Furthermore, the mayor and the board had a closed-door meeting at the May 30 meeting, concerning potential litigation with the property. This meeting occurred prior to the

---

[1] The record contains an unsigned option agreement.

mayor conveying the property to Worley Brown. The minutes reflected that the city council considered the possibility of litigation by the appellants, yet decided to have the mayor convey the land to Worley Brown. Therefore, the city council made a decision on the conveyance at the May 30 meeting. The City's argument is without merit. The August 9, 2005, resolution was not the final disposition of the issues. The January 24 extension of the option agreement and the May 30 conveyance of the property were both acts that extended beyond the August 9 resolution and option agreement.

**2.     Standing.**

¶18.    The City argues that the appellants have no standing to appeal the actions of the City. The City relies upon *Burgess v. City of Gulfport*, 814 So. 2d 149 (Miss. 2002) and *City of Madison v. Bryan*, 763 So. 2d 162 (Miss. 2000) to support its argument.

¶19.    This Court set forth the standard of review for issues of standing in *Burgess* as follows:

> It is well settled that "Mississippi's standing requirements are quite liberal." This Court has explained that while federal courts adhere to a stringent definition of standing, limited by Art. 3, § 2 of the United States Constitution to a review of actual cases and controversies, the Mississippi Constitution contains no such restrictive language. Therefore, this Court has been "more permissive in granting standing to parties who seek review of governmental actions." In Mississippi, parties have standing to sue "when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law."
>
> *State v. Quitman County*, 807 So. 2d 401, 405 (Miss. 2001) (citations omitted).

*Burgess v. City of Gulfport*, 814 So. 2d at 152-153. This Court also has held that "to have standing in this matter, [a claimant] must demonstrate that the City's action had an adverse effect on property in which he has an interest." *Bryan*, 763 So. 2d at 166.

9

¶20. We find these cases to be distinguishable. In ***Burgess***, a company sought a permit to remove a tree from its property. ***Burgess***, 814 So. 2d at 150-51. This Court held that residents opposing the tree removal had no standing because they did not own the property at issue and never "alleged that they own[ed] the land around the property in question, or that the land [had] been affected in an adverse manner." ***Id***. at 153. Likewise, in ***Bryan***, this Court held that Bryan had no standing since he had did not have title to the property, a valid option to purchase the property, or a mortgage or other encumbrance on the land. ***Bryan***, 763 So. 2d at 166.

¶21. Here, the appellants were property owners in the City, and their property was located near the Natchez Pecan Factory Site. Furthermore, the appellants alleged that the project would adversely impact their properties. We find that the City's argument is without merit.

### 3. January 24, 2006, Meeting.

¶22. The City argues that the appellants failed to perfect an appeal after the January 24, 2006, meeting. The appellants contend that there was no presiding officer at the January 24, 2006, meeting, therefore, the option agreement expired on February 9, 2006. Further, the appellants argue that the City had no jurisdiction subsequently to modify the option contract, because the appeal filed after the January 24, 2006, meeting effectively divested the mayor and board of jurisdiction to grant further extensions.

### A. Perfected Appeal.

¶23. The City argues that the appellants failed to perfect an appeal from the January 24, 2006, meeting. The City contends that the appellants only gave notice of an appeal and never perfected the appeal, since they did not submit a bill of exceptions and failed to have the

mayor sign the bill of exceptions. However, the record reflects that the appellants filed a notice of appeal and bill of exceptions on February 3, 2006. The notice included a service-of-process form and a receipt-of-service from the City, indicating timely delivery to the mayor. At the hearing, the City acknowledged that the mayor did not sign the bill of exceptions due to a disagreement with the facts presented by the appellants. In ***Reed v. Adams***, 236 Miss. 333, 341, 111 So. 2d 222, 225 (1959), this Court addressed the proper procedure for signing a bill of exceptions pursuant to Mississippi Code of 1942 Section 1195, which was the precursor of Mississippi Code Annotated Section 57-7-1. This Court held that if a mayor "deemed incorrect the bill of exceptions presented to him, he was under an implied duty to point out wherein he deemed the same incorrect so that the aggrieved parties might have an opportunity to amend the same, and then to sign the same as corrected." *Id*. at 225. The judge ordered the parties to work out an agreement for the contents of the record, and the record contains a final amended and consolidated bill of exceptions signed by the mayor. This bill of exceptions included the objections to the January 24, 2006, meeting. This issue is without merit.

**B.    No Presiding Officer.**

¶24.    At the January 23 meeting, the appellants objected to a lack of quorum and objected that the mayor unlawfully "presided" over the meeting by telephone. The mayor allegedly was in Jackson at the time of the meeting. The appellants contend that Mississippi Code Annotated Section 25-41-5 prohibits a mayor from presiding over a meeting by

11

teleconference. Further, the appellants argue that no thirty-day advance notice of the

teleconference was provided pursuant to Mississippi Code Annotated Section 25-41-5.[2]

---

[2] In 2007, the Legislature modified the language of Mississippi Code Annotated Section 25-41-5. *See* 2007 Miss. Laws, ch. 591, § 1, eff. from and after July 1, 2007. However, at the time of the 2006 proceeding, Mississippi Code Annotated Section § 25-41-5 provided:

(1) All official meetings of any public body, unless otherwise provided in this chapter or in the Constitutions of the United States of America or the State of Mississippi, are declared to be public meetings and shall be open to the public at all times unless declared an executive session as provided in Section 25-41-7.

(2) A public body may conduct any meeting, other than an executive session called pursuant to Section 25-41-7, wherein public business is discussed or transacted, through teleconference or video means. **If a quorum of the public body is physically assembled at one (1) location for the purpose of conducting a meeting, additional members of the public body may participate in the meeting through teleconference or video means provided their participation is available to the general public.** A quorum of the Board of Trustees of State Institutions of Higher Learning as prescribed in Section 37-101-9 and the State Board for Community and Junior Colleges as prescribed in Sections 37-4-3 and 37-4-4 may be at different locations for the purpose of conducting a meeting through teleconference or video means provided their participation is available to the general public.

(3) (a) Notice of any meetings held pursuant to subsection (2) of this section **shall be provided at least thirty (30) days in advance of the date scheduled for the meeting. The notice shall include the date, time, place and purpose for the meeting** and shall identify the locations for the meeting. All locations for the meeting shall be made accessible to the public. All persons attending the meeting at any of the meeting locations shall be afforded the same opportunity to address the public body as persons attending the primary or central location. Any interruption in the teleconference or video broadcast of the meeting shall result in the suspension of action at the meeting until repairs are made and public access restored.

*See* Miss. Code Ann. § 25-41-5, 2006 Miss. Laws, ch. 596, § 2. (emphasis added).

12

¶25.    Section 19 of the Charter of Natchez provides that the mayor is the presiding officer. The appellants contend that Mississippi Code Annotated Section 25-41-5 forbids a mayor from presiding over a meeting through a teleconference. A review of the statute in effect at the time of the meeting fails to locate any prohibition of a mayor presiding over a meeting via teleconference. *See* Miss. Code Ann. § 25-41-5 (Rev. 2006).

¶26.    However, the statute does require thirty days' advance notice for a teleconference of a scheduled meeting. *See* Miss. Code Ann. § 25-41-5(3)(a) (Rev. 2006). The record is silent concerning notice of the teleconference. Nonetheless, no prejudice was alleged or demonstrated by the appellants for the alleged lack of notice. The intent of the statute is to ensure that the meetings are open to the public and to give notice and opportunity for the public to participate in the process. *See* Miss. Code Ann. § 25-41-5(3)(a) (Rev. 2006). Here, the appellants attended the January 24 meeting, objected to the City's actions at the meeting, filed a notice of appeal and a bill of exceptions concerning the actions of the City at the meeting, argued their case before the circuit court, and have appealed the circuit court decision to this Court. Therefore, the appellants have had ample opportunity to participate in the process. Accordingly, this issue is without merit.

### C.    Caselaw on Pending Appeal.

¶27.    The appellants contend that their February 3, 2006, appeal, filed after the January 24, 2006, meeting, prohibited the City from extending the option agreement at subsequent meetings while the appeal was pending before the circuit court. The appellants rely upon *South Central Turf, Inc. v. City of Jackson*, 526 So. 2d 558 (Miss. 1988), and *Gatlin v. Cook*, 380 So. 2d 236 (Miss. 1980), for authority.

13

¶28. However, we find that the appellants' argument is misplaced. The City's final decision was the conveyance of the property to Worley Brown, not the extension of the option agreement. Unlike the extension at the January 24 meeting, *Gatlin* and *South Central Turf* considered the final decisions of the municipalities. This Court in *South Central Turf* held:

> As in *Gatlin v. Cook*, the City of Jackson was without authority to reconsider the matter which it had already finally decided on April 8, 1986, when the Mayor signed the minutes of the April 1 meeting, thereby giving effect to the Council's decision to award the contract to E-Z-Go. Mississippi Code Annotated § 21-8-17(2) (Supp. 1987); *City of Oxford v. Inman*, 405 So. 2d 111 (Miss. 1981).

*South Central Turf*, 526 So. 2d at 562-63. This Court finds that the final conveyance of the property to Worley Brown at the May 30, 2006, meeting, not the extensions of the option agreement, was the final, appealable decision of the City.

### 4. May 30 Meeting and Sale.

¶29. The appellants contend that the trial court erred by failing to determine that the sale of the Natchez Pecan Factory Site was arbitrary, capricious, illegal, and unsupported by the evidence. The appellants claim that the City conducted the sale of the property pursuant to an incorrect statute. Further, the appellants contend that the City failed to follow the requirements of the statute. Finally, the appellants argue that the sale was an unlawful donation by the City to Worley Brown.

¶30. This Court has set forth the standard of review as follows:

> We apply the same standard of review to the Board's legislative act as we apply in our review of administrative agency decisions. *Barnes v. Bd. of Supervisors, DeSoto County*, 553 So. 2d 508, 511 (Miss. 1989). Such decisions or orders are to be upheld unless "the agency order was unsupported by substantial evidence; was arbitrary or capricious; was beyond the agency's scope or powers; or violated the constitutional or statutory rights of the

14

aggrieved party." ***Bd. of Law Enforcement Officers Standards & Training v. Butler***, 672 So. 2d 1196, 1199 (Miss. 1996).

***Falco Lime, Inc. v. Mayor & Aldermen of Vicksburg***, 836 So. 2d 711, 721 (Miss. 2002).

### A.      The applicable statute.

¶31.   The appellants argue that the City improperly used Mississippi Code Annotated Section 57-7-1 to bypass the bid process in Mississippi Code Annotated Section 21-17-1. Mississippi Code Annotated Section 21-17-1(13) (Rev. 2007) provides the following:

> The powers conferred by this section **shall be in addition and supplemental to the powers conferred by any other law**, and nothing contained in this section shall be construed to prohibit, or to prescribe conditions concerning, any practice or practices authorized under any other laws.

(Emphasis added).  Mississippi Code Annotated Section 57-7-1 (Rev. 2003) provides:

> In the event that any municipality, county, supervisors district, municipal airport authority, regional airport authority or other governmental subdivision shall have surplus airport land or other lands which are not needed for airport purposes **or for other governmental purposes**, then such property so designated and described **may** be set aside and improved for industrial and commercial purposes and the same may thereafter be operated or the same **may** be leased or sold **upon such terms and conditions as a municipality, county, municipal airport authority, regional airport authority or governmental subdivision shall prescribe**.

> In order to provide for the improvement of such property for industrial and commercial purposes, the municipality or other authority shall be authorized to provide all necessary utilities therefor and to lay out, construct and/or improve and hard-surface roadways, streets, driveways and access roads, railroads and spur tracks, and provide for the grading, drainage, sewer, lights and water, and all other necessary or proper utilities as may be necessary or proper to make such land desirable or useful as a site or sites for industrial and commercial enterprises. The cost and expense of such improvements to said real estate shall be paid for from funds made available from the lease or sale of such lands to the extent such funds are available.

15

¶32. The provisions of Mississippi Code Annotated Section 21-17-1(13) clearly and unambiguously state that the powers conferred by Section 13 are "in addition and supplemental" to other laws and "nothing contained in this section shall be construed to prohibit, or to prescribe conditions concerning, any practice or practices authorized under any other laws."[3] Therefore, the City had authority to proceed pursuant to Mississippi Code Annotated Section 57-7-1.

**B.      The Statutory Language.**

¶33. The appellants also contend that the City failed to apply the statute correctly. First, the appellants contend that the City failed to set aside and improve the land and "thereafter" sell the land. Secondly, the appellants contend that the statute requires the development to be for commercial use, not residential development of condominiums.

**1.      The "Thereafter" Provision.**

¶34. The appellants argue that the City failed to comply with Mississippi Code Annotated 57-7-1. Specifically, the appellants contend that the statute requires that the surplus lands

---

[3] While opinions by the Attorney General are not binding on this Court, they nevertheless provide guidance. *See* Op. Att'y Gen., O'Neal (September 1, 2006) ("Therefore, it is the opinion of this office that, pursuant to either Sections 19-7-3 and/or 57-7-1, Waste Services may sell the building at issue to Oktibbeha County for good and valuable consideration, without necessity of advertising for bids, so long as the Board of Commissioners makes the appropriate findings in their minutes."); Op. Att'y Gen., Wagner (May 5, 2006) ("Additional authority to dispose of surplus municipal real property for commercial or industrial purposes is found in Miss. Code Ann. Section 57-7-1."); Op. Att'y Gen., Wagner (March 31, 2006) (The Attorney General has opined that in disposing of surplus property under the authority of this section, the governing authorities need not comply with the provisions of Section 21-17-1 for the disposal of surplus real property. MS AG Op., Carnathan (November 29, 2005); MS AG Op., Carnathan (November 21, 2003); MS AG Op., Campbell (October 24, 2003).")

16

must be set aside and improved for industrial and commercial purposes and "thereafter" be sold pursuant to the terms and conditions prescribed by the municipality. The statute provides, in part, that the property "**may** be set aside and improved for industrial and commercial purposes and the same **may thereafter** be operated or the same **may** be leased or sold upon such terms and conditions as" a municipality or governmental subdivision shall prescribe. *See* Miss. Code Ann. § 57-7-1 (Rev. 2003).

¶35.    The clear and unambiguous language of the statute does not mandate that the surplus land must be set aside and improved by the municipality. The language of the statute states that the municipality "may" set aside and improve the land "for industrial and commercial purposes and the same may thereafter be operated or the same **may** be leased or sold **upon such terms and conditions as**" prescribed by the municipality. Miss. Code Ann. § 57-7-1 (Rev. 2003). Additionally, Mississippi Code Annotated Section 57-7-1 does not mandate that the property can be sold only after improvements are made by the municipality. The statute does not mandate that improvements must be made on surplus land, therefore, the sale of the land is not dependent on whether improvements have been made to the land prior to its conveyance.[4] The second paragraph of Section 57-7-1 provides that if improvements are made, then "[t]he cost and expense of such improvements to said real estate shall be paid for from funds made available from the lease or sale of such lands to the extent such funds are

---

[4] *See* Op. Att'y Gen., Wagner (March 31, 2006) ("Pursuant to the second paragraph of Section 57-7-1, a municipality **may** undertake work necessary to make the site or structure suitable for the commercial or industrial purposes, which **may** include repairs to the structure. MS AG Op., Carnathan (November 29, 2005).") (emphasis added).

available." Miss. Code Ann. § 57-7-1 (Rev. 2003). This language implies that the monies for the improvements would be available *after* a lease or sale is finalized unless there is an unusual arrangement for prepayment of all or a portion of the lease payments or sale of the property. Therefore, a municipality would begin the improvements *after* it received payments for the lease or sale. In addition, should a municipality make improvements *before* a lease or sale is finalized, then the municipality would place its funds at risk in the event that the lease or sale should fail to be consummated.[5] Accordingly, we find that this issue is without merit.

### 2.    Classification of the Property.

¶36.    The appellants contend that the trial court erred by classifying the proposed development of condominiums as commercial property. The City argues that the property is not zoned as residential, industrial, or commercial property. The property is zoned as "Waterfront Development District" property, which is intended to be a mixed-use district of property. The City contends that the condominiums would be similar to resort condominiums in Gulf Shores, Alabama, and Destin, Florida. Furthermore, the City cites attorney general opinions concerning Mississippi Code Annotated Section 57-7-1 for authority.

---

[5] *See* Op. Att'y Gen., Lanford (January 19, 2007) ("The question of the chronological order of the execution of the lease and the construction of improvements on surplus lands under Section 57-7-1 has apparently never before been addressed by the courts or by Attorney General's opinions, so the question is one of first impression. To allow the execution of the lease to go forward and then carry out the Improvements on the Site would, in this instance, do no violence to the statute and would enable Rentech to secure the necessary private financing and so construct the Plant and complete the Project," and "It is our opinion that the terms of the lease to be prescribed by the county in its agreement with the developer may provide for construction of the improvements after execution of the lease agreement.").

¶37. While attorney general opinions are not binding on Mississippi courts, they can be persuasive authority for consideration by our courts. *DuPree v. Carroll*, 967 So. 2d 27, 31 (Miss. 2007). The City of Tupelo intended to develop a portion of the City with a "master plan" that "call[ed] for the development of office buildings, townhouses, parks and innovative downtown uses." Op. Att'y Gen., Cofer (June 19, 1998). The opinion by the Attorney General's Office provided that Mississippi Code Annotated Section 57-7-1 permitted the disposal of surplus property for industrial and commercial purposes. *Id*.

¶38. The trial court did not err by finding that the proposed development of the condominiums was commercial in nature. This issue is without merit.

### C. Donation.

¶39. The appellants argue that the City effectively has donated the property to Worley Brown. The City proposed to sell the property to Worley Brown for $500,000, to make some improvements on the property, and to provide some tax incentives. This Court has not addressed this issue in prior rulings. The statutory language of Mississippi Code Annotated Section 57-7-1 does not address whether the proceeds from a lease or sale are for valuable consideration versus a donation. In contrast, Mississippi Code Annotated Section 21-17-1 provides, in part, that the lease or sale of property is awarded to the highest bidder or for a fair market price determined by an average of three appraisals. *See* Miss. Code Ann. 21-17-1 (2)(a) and (b) (Rev. 2007). However, Mississippi Code Annotated Section 57-7-1 is an economic development statute. Therefore, the objective of the City's sale or lease of surplus property may not be to receive the highest purchase price. In other words, the lease or sale may be tied to a vision for a city development plan. The City had a Riverfront Development

19

Plan. In addition, numerous opinions by the Attorney General's Office have opined that a lease or sale should be for "good and valuable consideration" and not necessarily fair market value. *See* Op. Att'y Gen., O'Neal (September 1, 2006); Op. Att'y Gen., Wagner (March 31, 2006). The goal of economic development may be more than the immediate receipt of the highest bid or appraisal value offered for surplus property. Indeed, other factors impact economic development plans, such as increased tourism, creation of jobs, increased support industries, increased need for housing, and collection of property taxes. *See* Op. Att'y Gen., Wagner (March 31, 2006). Accordingly, the trial court did not err by finding that the price of the property accepted by the City was reasonable for the sale of the Natchez Pecan Factory Site.

### 5. Walkway.

¶40. On cross-appeal, the City contends that the trial court erred by finding that any restriction of access by the general public of the existing sidewalk and walkway was unreasonable. The City has devoted limited argument to this issue, and the appellants do not address the issue at all. Notwithstanding the limited argument by the City, the trial court did not err by prohibiting access to the sidewalk and walkways, as the option agreement provided for such access by the general public. Accordingly, this issue is without merit.

### CONCLUSION

¶41. For the foregoing reasons, the judgment of the Adams County Circuit Court is affirmed on direct appeal and affirmed on cross-appeal.

¶42. **ON DIRECT APPEAL: AFFIRMED. ON CROSS-APPEAL: AFFIRMED.**

20

**SMITH, C.J., WALLER AND DIAZ, P.JJ., AND GRAVES, J., CONCUR. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON, RANDOLPH AND LAMAR, JJ.**

**DICKINSON, JUSTICE, DISSENTING:**

¶43.    Although I agree with the majority's conclusion that the sale of property should not be set aside, I disagree with its conclusion that this Court has jurisdiction to review the matter. The appellants clearly did not comply with the statute Miss. Code Ann. § 11-51-75 (Rev. 2002), which required them to timely appeal a "judgment or decision" of the Natchez Board of Aldermen.  Rather than appealing the Aldermen's May 9, 2006, decision to enter into the binding contract to sell the property, appellants purported to appeal the closing of the sale of the property, which took place on May 30.  By that time, it was too late to appeal the decision to sell the property.  I therefore respectfully dissent to the majority's finding of jurisdiction, and would dismiss this appeal.

¶44.    The following statutory language controls this case:

> Any person aggrieved by a <u>judgment or decision</u> of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision . . . .

Miss. Code Ann. § 11-51-75 (Rev. 2002) (emphasis added).

¶45.    On May 9, 2006, the aldermen voted to enter into a binding contract[6] to sell the subject property.  Appellants did not appeal this decision within ten days, as required by the statute. Instead, appellants purported to appeal the closing, which occurred twenty-one days later.

---

[6]The option agreement had expired, and the decision to extend it was tantamount to entering a new, binding contract.

21

Neither the City of Natchez nor its aldermen made an appealable decision at the closing. They simply complied with their contractual obligations. Stated another way, the purpose of the May 30 meeting was merely to consummate the sale and execute the deed, which the City of Natchez was bound to do as a result of its previous grant of the option.

¶46.   It is worth noting that, under its option contract with the City of Natchez, Worley-Brown had the legal power of acceptance by tendering the required money. By doing so, Worley-Brown had the right to immediate conveyance of the property, and the City of Natchez had the legal duty to make the conveyance. *See generally* **3-11 Matthew Bender and Company, Inc., Corbin on Contracts § 11.1 (2007)**. When the aldermen voted on May 9 to renew the option agreement, they limited the City's power to revoke the sale. At that point, the City of Natchez' decision to sell the land was final. Once Worley-Brown exercised the option within the deadline, the City was legally bound to convey the property and the sale was inevitable.

¶47.   The majority curiously and erroneously finds the aldermen's May 30 "closed-door" meeting to discuss potential litigation somehow led a final appealable decision. The aldermen's discussions had nothing to do with the City's legal obligation to convey the property.

¶48.   Accepting (as I must) the majority's finding that the May 30 closing of the sale was an appealable decision, it is worth pondering how appellants could possibly have prevailed in their appeal to the circuit court. It seems to me they would have to have successfully attacked the decision to enter the option contract, since one can hardly attack a closing. Thus, what is really being appealed is the sale, not the closing.

22

¶49. Some of the majority who often allow public policy to guide their decisions should, in my view, consider the disastrous potential of today's decision. A party desiring to purchase property from a city must now worry that, even after paying the purchase price, receiving a deed of closing, and filing it of record, some citizen may appeal the sale − which may have occurred a year prior to the closing. I predict the title insurance companies will have fun with this one. Appellants should have appealed within ten days of the May 9 decision. Because they did not, this Court lacks jurisdiction, and this appeal should be dismissed.

**CARLSON, RANDOLPH AND LAMAR, JJ., JOIN THIS OPINION.**