IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI
NO. 2019-CA-01640-COA

TOM FOSTER AND ALUMNI OF RULEVILLE CENTRAL HIGH SCHOOL

APPELLANTS

v.

SUNFLOWER COUNTY CONSOLIDATED SCHOOL DISTRICT

APPELLEE

DATE OF JUDGMENT: 09/27/2019
TRIAL JUDGE: HON. DEBRA MICHELLE GILES
COURT FROM WHICH APPEALED: SUNFLOWER COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS: ALSEE McDANIEL
ATTORNEYS FOR APPELLEE: CARLOS D. PALMER
TANGALA L. HOLLIS-PALMER
NATURE OF THE CASE: CIVIL - OTHER
DISPOSITION: AFFIRMED - 02/09/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. This action arises from a decision by the Sunflower County Consolidated School District School Board (Board) to rename "Ruleville Central High School" to "Thomas Edwards, Sr. High School" at the request of Thomas Edwards Sr.'s son. Plaintiffs are alumni of the high school who oppose the name change (collectively "Plaintiffs"). After the Board made the decision at a regular board meeting, the alumni asked the Board to reconsider its decision. When the Board did not reconsider the name change, Plaintiffs filed a complaint for a declaratory judgment and injunctive relief against the Sunflower County

Consolidated School District (District) as well as a motion for a temporary restraining order and a temporary injunction in the Sunflower County Chancery Court. Plaintiffs contended the District violated existing policies about community involvement in board decisions and provided inadequate notice of the name change. The chancery court denied Plaintiffs' request for relief and dismissed their complaint, finding not only that Plaintiffs failed to seek relief properly under Mississippi Code Annotated section 11-51-75 (Rev. 2019)[1] but also because there was no merit to their arguments. Foster and the other alumni appealed.

¶2. We affirm the chancery court's dismissal of Plaintiffs' complaint for declaratory and injunctive relief. While the chancery court erred in applying section 11-51-75 to the matter, Plaintiffs lacked standing to bring the claim. Therefore, the chancery court lacked jurisdiction to consider the complaint. "[A]n appellate court may affirm a trial court if the correct result is reached, even if the trial court reached the result for a different reason." *Davis v. City of Jackson*, 240 So. 3d 381, 385 (¶13) (Miss. 2018) (While the chancery court dismissed the complaint based on the failure to follow section 11-51-75 procedure, the proper result was reached because the plaintiffs lacked standing, and the supreme court affirmed.). Accordingly, we affirm the chancery court's dismissal.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3. The District oversees and maintains several schools in Sunflower County, including the high school at issue here. Ruleville Central High School (High School) was established in the 1930s and has alumni throughout Mississippi and other parts of the United States.

---

[1] This statute provides aggrieved parties with the procedure to appeal from a judgment or decision made by municipal or county governing authorities.

Tom Foster is an alumnus of the High School and lives in Ruleville, Mississippi. Additionally, he is a member of the "Concerned Citizens Group of Ruleville" (Concerned Citizens), which is a group that opposes the name change.

¶4. In April 2018, Dr. Darron Edwards, the superintendent of a neighboring school district and Ruleville resident, made a verbal proposal before the Board to change the name of the High School to "Thomas Edwards, Sr. High School" in honor of his father, who was a former superintendent of the District. The Board's policy for renaming a school required posthumous recommendations and a majority vote from the Board; however, at this time, Thomas Edwards Sr. was still alive. During the May or June 2018 board meeting, the Board informed Dr. Edwards of its policy. The Board instructed him to "get a pulse from the community" by submitting to them a petition of signatures from residents who supported the High School's name change. Miskia Davis, superintendent for the District, testified that the Board asked Dr. Edwards to obtain 250 to 500 signatures for "community input" supporting the name change. Later, Dr. Edwards presented the Board with the petition of signatures, but there was no testimony about the number of signatures obtained.

¶5. During the September 2018 board meeting, the Board decided to change its posthumous requirement and allow a school to be named after a living person. The Board also revised the voting policy so that a unanimous vote would be required for the name change. However, the Board did not vote to change the name of the High School at this meeting. The Board continued to meet monthly through the fall without taking action on the proposed name change.

¶6.     Foster testified that he learned about the Board's considering the name change from his son, also an alumnus of the High School. His son attended the September 2018 meeting by invitation of Dr. Edwards, where the High School's possible name change and revision of the posthumous policy were discussed. Foster also read an article about the meeting and possible name change in the local newspaper in September 2018.

¶7.     On December 18, 2018, during its regular board meeting, the Board voted unanimously to rename the High School as Thomas Edwards, Sr. High School. However, Plaintiffs complained that they did not find out about the name change until after this meeting. Superintendent Davis acknowledged that no formal notice about the name change was issued to the students of the High School, the Ruleville community, or any community organizations in Ruleville or Sunflower County.

¶8.     Foster claimed neither he nor the Concerned Citizens were made aware of the initial proposal for the name change by Dr. Edwards back in April 2018. Despite Foster's opposition to the name change, after he learned about it in September 2018 from his son, he did not attend the October, November, or December 2018 regular board meetings. Foster did, however, attend the board meeting in either January or February 2019, after reading another article in the local newspaper entitled "RCHS To Be Renamed in Honor of Thomas Edwards." Only at that time did Foster begin mobilizing alumni and members of the Concerned Citizens group to address the Board and "get an understanding . . . of what was going on." Foster testified that he was not personally aware of any board or district policy that authorized the Board to change the name of the High School. Further, he admitted he

4

was unaware of any policy requirement for community participation in changing a school's name.

¶9.    Tom Allen, a High School alumnus and resident of Madison, Mississippi, learned of the Board's decision to change the school's name during a Christmas party on December 24, 2018. Allen then called alumni, friends, and community members in Ruleville to find out if they were aware of the Board's decision. Allen also called Edward Thomas, the Board's president, to confirm that the Board had approved the name change. Allen requested attendance at a meeting in order to ask the Board to reconsider or reverse the name change. Allen also testified that a circulated petition had received 700 signatures of alumni and Ruleville community members who opposed the name change. Allen testified he attended five or six board meetings to request the Board reconsider its decision, without success. When the District's counsel asked if Allen had filed a bill of exceptions, he stated he had not, explaining he had hoped his petition and personal appeal would cause the Board to change its decision.

¶10.   On July 11, 2019, Foster, individually and on behalf of alumni against the name change, filed a complaint and motion asserting the District violated existing policies and provisions by changing the name of the school. Plaintiffs claimed the Board's decision was made based only upon the request of Thomas Edwards Sr.'s family members without any input from school officials, students, or the Ruleville community. Plaintiffs sought "to preclude the school district . . . from proceeding with further actions to effectuate the Board's decision until a final judgment [wa]s rendered" in the case. They claimed the

5

Board's name change would have "immediate and irreparable harm" as well as "a detrimental effect on the educational, athletic, and other programs at Ruleville Central High School, including future community support for the School, including . . . financial support . . . from the community."

¶11.    On July 22, 2019, the District filed a motion to strike Plaintiffs' complaint, as well as Plaintiffs' motions, and a motion to dismiss all claims.  The District argued that Plaintiffs had failed to file their appeal properly under section Mississippi Code Annotated section 37-7-115 (Rev. 2019), which provides:

> Any person aggrieved by an order of the school board adopted under any of *the foregoing provisions* may appeal therefrom within ten (10) days from the date of the adjournment of the meeting at which such order is entered.  Said appeal shall be taken in the same manner as appeals are taken from judgments or decisions of the board of supervisors as provided in Section 11-51-75, Mississippi Code of 1972, the provisions of which shall be fully applicable to appeals taken hereunder. . . .

(Emphasis added).  The District also cited Mississippi Code Annotated section 11-51-75, referenced in the above statute, which provides that "[a]ny person aggrieved by a judgment or decision of the board of supervisors of a county, or the governing authority of a municipality, may appeal . . ." to the circuit court within ten days of the decision.  The District argued that Plaintiffs' complaint and motions under section 11-51-75 were untimely and filed in the wrong court; therefore, they should be dismissed.

¶12.    On August 13, 2019, the chancery court held an evidentiary hearing where Davis, Foster, and Allen testified.  Plaintiffs also entered into evidence the local newspaper article dated December 20, 2018, seeking to show the proper policy was not followed for the name

6

change. The article reported that "after a brief discussion in an earlier work session," the Board added the name change to the December meeting agenda after placing the decision "on hold" during the Board's September 13 meeting in order to change the policy that an individual must be deceased before having a school named in his or her honor. A board member who voted against the policy change was quoted in the article as stating she was "not against the change, but there was a proper protocol that needed to be met and everyone needed to be made aware of it 'in all fairness.'" According to the article, "[s]he also maintained that others had approached her with additional suggestions for naming the school."

¶13. The chancery court denied Plaintiffs' requested relief and dismissed the complaint. The court analyzed "the success of Plaintiffs' petition for declaratory and injunctive relief contesting a municipal authority's decision." However, a school board is not a "municipal authority." Moreover, the chancery court analyzed the complaint under section 11-51-75 and caselaw involving appeals from county and municipal authorities, finding that section 11-51-75 was the "exclusive remedy" and that the complaint was untimely because it was not filed within the ten-day statute of limitations. On the merits, the chancery court found substantial evidence to support the propriety of the name change: the Board properly notified the community about its intention to change the school's name and obtained community input; the Board conducted its meetings properly including proper notice about the name change; and the name change would not affect the quality of the school's education.

¶14. Plaintiffs appealed, raising two issues: (1) whether the chancery court erred in

dismissing Plaintiffs' complaint for failure to exercise the exclusive remedy provided by section 11-51-75; and (2) whether there was substantial, credible evidence that the Board's action to rename the High School was arbitrary or capricious, in violation of the District's policies. We find the chancery court erred in dismissing the complaint for failure to exercise the exclusive remedy provisions of section 11-51-75 because that section does not apply to Plaintiffs' action. However, the chancery court did not have jurisdiction to hear the matter because Plaintiffs lacked standing.

## ANALYSIS

### I.     Applicability of Section 11-51-75

¶15.   First, we discuss the applicability of section 11-51-75, which provides:

> Any person aggrieved by a judgment or decision of the *board of supervisors of a county, or the governing authority of a municipality*, may appeal the judgment or decision to the circuit court of the county in which the board of supervisors is the governing body or in which the municipality is located. A written notice of appeal to the circuit court must be filed with the circuit clerk within ten (10) days from the date at which session of the board of supervisors or the governing authority of the municipality rendered the judgment or decision.

Miss. Code Ann. §11-51-75 (emphasis added). This code section describes how to appeal from judgments or decisions made by the county board of supervisors or municipal governing authorities. "The statute, by its plain language, does not apply to appeals from school board decisions. Furthermore, the Legislature has not otherwise provided for . . . a general judicial review of school board decisions . . . ." *Prisock v. Perkins*, 735 So. 2d 440, 443 (¶17) (Miss. 1999). Section 37-7-115 provides that appeals from *certain* school board orders may be taken under section 11-51-75; however, these decisions must have been

8

adopted under "the foregoing provisions," meaning Chapter 7, Article 3 of Title 37 of the Mississippi Code Annotated. These provisions provide for the "abolition, alteration, and creation of [school] districts"—not the renaming of a school. Accordingly, section 37-7-115 does not apply, and as a result, section 11-51-75 is inapplicable as well. For this reason, the chancery court erred in dismissing Plaintiffs' complaint for failure to exercise the statute's exclusive remedy.

## II.    Standing

¶16.    Neither the parties nor the chancery court addressed Plaintiffs' standing to raise their claims. "[S]tanding is a jurisdictional issue that may be raised by the parties or the Court at any time." *Araujo v. Bryant*, 283 So. 3d 73, 77 (¶12) (Miss. 2019) (citing *City of Madison v. Bryan*, 763 So. 2d 162, 166 (¶20) (Miss. 2000)). Lack of standing "robs the court of jurisdiction to hear the case." *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 826 (¶32) (Miss. 2009) (internal quotation marks omitted) (quoting *Pruitt v. Hancock Med. Ctr.*, 942 So. 2d 797, 801 (¶14) (Miss. 2006)). Standing is a question of law. *City of Jackson v. Allen*, 242 So. 3d 8, 13 (¶19) (Miss. 2018). Mississippi's law on standing is "quite liberal," and Mississippi courts have been "more permissive in granting standing to parties who seek review of governmental actions." *City of Jackson v. Greene*, 869 So. 2d 1020, 1023 (¶11) (Miss. 2004). Generally, under Mississippi jurisprudence, "parties may sue only where they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law." *Id.* at 1024 (¶12).

9

An interest is deemed colorable if it 'appears to be true, valid, or right.' An individual's legal interest or entitlement to assert a claim against a defendant must be grounded in some legal right recognized by law, whether by statute or by common law. For a plaintiff to establish standing on grounds of experiencing an adverse effect from the conduct of the defendant/appellee, the adverse effect experienced must be different from the adverse effect experienced by the general public.

*Araujo*, 283 So. 3d at 77 (¶14) (citations and internal quotation marks omitted).

¶17. Here, we must determine whether Plaintiffs asserted "a colorable interest in the subject matter of the litigation" or experienced an adverse effect different from that experienced by the general public. They have presented neither a legal right grounded in statutory or common law to challenge the Board's renaming of the school, nor adverse effects that would impact them differently than the school and community.

¶18. The Mississippi Supreme Court set forth the requirements for a party to have standing to bring a civil action in *Ball v. Mayor & Board of Aldermen of Natchez*, 983 So. 2d 295 (Miss. 2008), and *Burgess v. City of Gulfport*, 814 So. 2d 149 (Miss. 2002). Both cases dealt with appeals under section 11-51-75 involving property. In *Ball*, residents of Natchez challenged the City's sale of surplus land to a condominium developer. *Ball*, 983 So. 2d at 297 (¶1). The supreme court held that the residents had standing because when they owned property within the municipality, their property was located near the subject property, and they alleged the project at issue would adversely impact their properties. *Id.* at 301 (¶21).[2]

_____

[2] In *Prisock*, the Mississippi Supreme Court held that since there was no statutory scheme for appealing the school board's decision to select another competing bid for a hunting and fishing lease, the plaintiff had an inadequate remedy at law, and he could file an original action for injunction in chancery court to challenge the decision. *Prisock*, 735 So. 2d at 443 (¶18). Although standing was not mentioned, the plaintiff had an interest in the subject matter of the litigation because he was the unsuccessful bidder.

In contrast, the supreme court in *Burgess* found the residents did not have standing. *Burgess*, 814 So. 2d at 153 (¶17). In that case, Gulfport residents challenged the city council's decision to accept the recommendation of the planning commission to issue tree-removal permits to condominium developers. *Id.* at 150 (¶1). The supreme court found no colorable interest in the litigation because the residents did not own the property in question, or the land around the property in question, and the land had not been affected in an adverse manner. *Id.* at 153 (¶15). The residents argued that merely residing in the municipality was sufficient to confer standing, but the supreme court disagreed. *Id.* at (¶16).

¶19. Similarly, in *Mississippi Division of Sons of Confederate Veterans v. University of Mississippi*, 269 So. 3d 1235, 1242 (¶16) (Miss. Ct. App. 2018), this Court found the plaintiffs had no standing. The plaintiffs filed an action for an injunction in response to the university's plan to move or rename confederate monuments and related items. *Id.* at 1238 (¶2). This Court found "SCV had no interest separate from or in excess of that of the general public" but the matter "affected the public interest and could be brought, if at all, only by the Attorney General or a district attorney. SCV's members have no private right that entitles them to require that UM refrain from implementing its diversity plan." *Id.* Further, in *Schmidt*, the supreme court held that former parishioners had no standing to assert a claim for interest in church property after a bishop closed the church due to damage from Hurricane Katrina. *Schmidt*, 18 So. 3d at 818, 826 (¶¶1, 31). The church no longer existed due to a merger with another church, and the supreme court found the "extent of the plaintiffs' property or beneficial interest in the [church] property was inextricably tied to

11

their status as members of [the church]." *Id.* at 828 (¶34). Further, the fact that certain former parishioners donated money to the church to purchase property did not give them standing to assert a resulting trust. *Id.* at (¶36). The supreme court found that donors who make contributions for a specific purpose or with the intent to benefit only a certain parish do not acquire any ownership interest in church assets; therefore, the donors had no legally enforceable interest in the church property and lacked standing to assert a resulting trust. *Id.* The supreme court found that subject matter jurisdiction existed for a claim that the church defendants improperly diverted designated funds, but in order to establish a viable claim, a plaintiff must prove that the funds were solicited by the church and that the donor pledged a contribution for the solicited purpose. *Id.* at 830-31 (¶¶44-45).

¶20. In this case, the only adverse effects Plaintiffs have expressed are vague allegations of "immediate and irreparable" harm to the High School and community due to lack of future financial support from the community. However, these alleged harms would not impact Plaintiffs individually, but rather the school and community, and therefore any adverse effects on them would be no different than those to the general public. Accordingly, Plaintiffs lacked standing.

## CONCLUSION

¶21. Plaintiffs lacked standing to sue the District, and therefore the chancery court lacked jurisdiction to hear the complaint. Because we find the chancery court reached the proper result in dismissing the complaint, we affirm.

¶22. **AFFIRMED.**

12

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR.**