# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01763-SCT

*DR. CHARLES HALL, JANET H. CLARK, BEATRICE LANGSTON BERRY, KATE SHARP, BELINDA BOOZER, WILLIAM MURPHY, CAROL MURPHY, STEVE HANNEKE, MARY ELLEN MARTIN, MARY S. GODBOLD, BOBBY J. STOKES, KEVIN CAMP, GARY E. PAYNE, MARIA ROSA GUTIERREZ, DENISE MICHELLE WILSON, MARY BISHOFF, JOHN AUSTIN EVANS, MEL EVANS, LARRY STOWE, PAIGE STOWE AND KIM H. LOPER*

*v.*

*THE CITY OF RIDGELAND, MISSISSIPPI, MADISON COUNTY LAND COMPANY, LLC, SOUTHERN FARM BUREAU BROKERAGE COMPANY, INC., BAILEY-MADISON, LLC, 200 RENAISSANCE, LLC, 100 RENAISSANCE, LLC AND RENAISSANCE AT COLONY PARK, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/22/2008 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | STEVEN H. SMITH |
| ATTORNEYS FOR APPELLEES: | JERRY L. MILLS |
| | JAMES H. GABRIEL |
| | DONALD JAMES BLACKWOOD, JR |
| | JAMES A. PEDEN, JR. |
| | GLENN GATES TAYLOR |
| | LINDSEY M. TURK |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | ON DIRECT APPEAL AND CROSS-APPEAL: AFFIRMED – 06/10/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRAVES, P.J., LAMAR AND KITCHENS, JJ.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This appeal regards the legality of an ordinance issued by the City of Ridgeland on October 10, 2007 ("the October 10, 2007, Ordinance"), to allow developers to construct a thirteen-story office building along Interstate 55, on the northeast corner of the nearly seventy-six-acre commercial development called Renaissance at Colony Park, located in Ridgeland, Mississippi. A group of Ridgeland residents who live near Renaissance at Colony Park ("the Protestants") appealed the City's decision approving construction of the building to the Circuit Court of Madison County. The developers of the building ("the Developers") intervened in the lawsuit (which initially named only the City of Ridgeland as an appellee) and filed two motions to dismiss, challenging the Protestants' standing to sue. The circuit court denied the Developers' motions to dismiss, but affirmed the City of Ridgeland's decision to allow construction of the building, finding that the decision was not arbitrary or capricious and was supported by substantial evidence.

¶2. On appeal to this Court, the Protestants contest the circuit court's ruling regarding the legality of the October 10, 2007, Ordinance. The Developers, as appellees/cross-appellants, contest the circuit court's denial of their motions to dismiss. We find that the Protestants have standing, but affirm the circuit court's finding in favor of the City of Ridgeland and the Developers.

## FACTS AND PROCEDURAL HISTORY

¶3. On August 16, 2007, Madison County Land Company, LLC, Southern Farm Bureau Brokerage Company, Inc., and Bailey-Madison, LLC (hereinafter collectively referred to as

2

"the Bailey Companies" or "the Developers") filed a petition with the City of Ridgeland requesting a conditional use permit (also known as a special exception) and a variance to enable them to construct "an office building not to exceed 17 stories in height, including three levels of parking space and up to 14 stories of office space." The Developers also requested a variance "from certain front yard setback requirements for the structured parking deck at the northwest corner of the office building." The office building, which has since been constructed, is known as 200 Renaissance.

¶4. The real property upon which the building has been constructed is 4.5241 acres of land, located at the southwest corner of the intersection of Interstate Highway 55 and Steed Road, in Ridgeland, Mississippi. This property is located at the northeast corner of the 75.921-acre tract generally referred to as Renaissance at Colony Park, designed to include professional office buildings, a hotel, restaurants, and a retail commercial area.[1]

¶5. The eastern portion of the subject property lies along the western right-of-way of Interstate Highway 55, and is zoned C-4 Highway Commercial District. A small portion of

---

[1] The Developers describe Renaissance at Colony Park as follows:

Renaissance at Colony Park comprises 75.9 acres of land and is part of the $500 million Colony Park Development between Highland Colony Parkway and Interstate 55. All of the 75.9 acres that make up Renaissance at Colony Park are owned by subsidiaries or affiliated entities of the H.C. Bailey Companies, with the exception of two parcels owned by BankPlus and Hyatt Place Hotel, which parcels were formerly owned by subsidiaries or affiliated entities of the H.C. Bailey Companies. Renaissance at Colony Park has been carefully designed to integrate professional office buildings, a hotel, restaurants, and high-end retail shopping. Renaissance at Colony Park opened in March 2008. It is, or will become, the premier mixed-use development (office and retail) in Mississippi, if not in the entire Deep South.

3

the subject property, on the western side, is zoned C-3 Commercial District. Professional offices to a maximum height of four stories are automatically permitted in the C-4 Highway Commercial District. If a developer wishes to build a building exceeding four stories or forty-eight feet in a C-4 Highway Commercial District, the developer can apply under Section 440.03.H of the Zoning Ordinance of the City of Ridgeland (hereinafter referred to as "Ridgeland's Ordinance") for a conditional use permit. If a developer wishes to build in excess of four stories or 48 feet in a C-3 Commercial District, the developer must apply for a variance; Ridgeland's Ordinance does not provide for a conditional use regarding height in a C-3 District.

¶6. Both the C-4 and C-3 portions of the property have a minimum front-yard setback requirement of thirty feet. Because the northwest corner of the proposed 200 Renaissance development will come within the front-yard setback requirement, the Developers sought a variance from this requirement. Notably, the encroachment into the setback area is located on a portion of the property that borders the 100 Renaissance building, which is owned by an entity affiliated with the Developers, which has no objection to the setback variance.

¶7. The proposed building will house the offices of Butler, Snow, O'Mara, Stevens & Cannada, PLLC, Horne CPA Group, and the regional corporate headquarters of Regions Bank.

¶8. On September 10, 2007, a hearing regarding the proposed 200 Renaissance development took place before Ridgeland's Planning and Zoning Commission. The Zoning Board listened to a presentation of the Developers' petition, which emphasized that the

4

petition was consistent with the policies of the Comprehensive Plan of the City of Ridgeland,[2] and which pointed out that conditional uses previously had been approved in the area to permit the construction of other structures that exceed four stories, including a replica of the Washington Monument to a height of 190 feet; 300 Renaissance (the Cellular South building) to a height of eight stories; and the Hyatt Place Hotel to a height of six stories.[3]

---

[2] The Developers explained that the petition was consistent with the policies of the Comprehensive Plan of the City of Ridgeland, including Policy 54, calling for the employment of variances, special-use permits, and other flexible zoning techniques; Policy 29.2, encouraging the location of regional shopping centers along highways; Policy 29.4, allowing office uses in all commercial districts and encouraging office parks and office districts along highways; Policy 29. 5, encouraging mixed-use districts, including office and retail space along major streets and interstate highways; and Policy 33, encouraging a mix of high-quality retail and office development on Highland Colony Parkway.

[3] The Protestants, on the other hand, argue that the 200 Renaissance building presents a stark contrast to the Ridgeland landscape, stating:

> At the time of the City's actions and Decisions to approve the variance and conditional use(s) for the 200 Renaissance Development, there were 73 commercial office buildings already located on or adjacent to the Highland Colony Parkway within the City of Ridgeland city limits. Of the 73 office buildings located on the Highland Colony Parkway, *72 buildings were four stories or less*; with only the Cellular South building a/k/a 300 Renaissance (another H.C. Bailey-related company development) being taller than four stories. . . .

In addition, the Protestants' Reply Brief argues that:

> [t]he other buildings pointed out by [the Developers] as examples of other tall buildings as precedent (Brief of Appellees/Cross-Appellants, p. 13-14) are legally distinguishable: (a) "the replica of the Washington Monument" is a cell tower, exempt from height regulations pursuant to Article III, Section 31.07 of Ridgeland's Ordinances; (b) 300 Renaissance is in a distinct zoning district, C-2, and provides no precedent for the 200 Renaissance construction in C-3 and C-4 zoning districts; [(]c) the Hyatt Place Hotel, Renaissance Clock Tower, and Embassy Suites Hotel were permitted *after* the subject 200 Renaissance Development was illegally allowed . . . .

5

The Developers also called the following experts to testify: an architect involved in the design of 200 Renaissance, who testified regarding the building's aesthetics and the building's contribution to sustainable development; a professional surveyor, who testified regarding the building's proximity to outlying neighborhoods and who concluded that the building would not invade homeowners' privacy; a public-finance consultant, who testified regarding the economic benefit to the community from the operation of the building; an appraiser and expert in property valuation, who testified that the building would increase property values and would extend the economic life of the surrounding residential areas; and a professional traffic engineer, who testified that, with the ongoing road network changes, the road system would adequately handle any increase in traffic. In addition, the Zoning Board heard testimony from citizens who supported the petition and citizens who opposed it. At the end of the nearly four-hour hearing, no board member's motion, either for or against the petition, was seconded, so the Zoning Board decided it had reached an impasse and would forward all the information gathered at the hearing to the Mayor and Board of Alderman as the Zoning Board's "recommendation."

¶9. Following the hearing before the Zoning Board, the Developers made two amendments to their petition. The first amendment, submitted on September 11, 2007, explained that, as orally announced at the hearing before the Zoning Board the previous day, the Developers were amending their original petition to reduce the requested height of the building to thirteen stories. The Developers continued to seek a variance from the setback requirements.

6

¶10. The second amendment, submitted on September 14, 2007, explained that the Developers had determined that the 200 Renaissance building would be located only on the portion of the subject property zoned C-4 Highway Commercial District, not on the portion of the subject property zoned C-3 Convenience Commercial District. Therefore, in the second amendment, the Developers dismissed their request for a height variance, which would have been necessary if the building had been located in whole or in part in the C-3 district. In sum, in regard to height, the Developers sought only a conditional use permit to construct a thirteen-story office building on the portion of the subject property zoned C-4 (and not the property zoned C-3).

¶11. The second amended complaint also addressed the issue of the Maximum Floor Area Ratio ("FAR"), explaining that the Developers had been told by responsible City of Ridgeland officials that the Ridgeland Ordinance's Section 440.04.E's FAR dimensional requirements would not apply, should a conditional use be granted to build in excess of four stories. Further, the second amendment stated that, if the Mayor and Board of Alderman were to find that Section 440.04.E does apply, then the Developers would request a variance from 440.04.E's requirements. The second amendment noted that the Developers continued to seek a variance from certain setback requirements. In addition, it declared that the petition was consistent with policies of the Comprehensive Plan of the City of Ridgeland.

¶12. Upon an appeal by the Protestants (who were aggrieved by the Zoning Board's lack of recommendation to deny the petition), on October 10, 2007, a hearing regarding the 200 Renaissance development took place before Ridgeland's Mayor and Board of Aldermen. At

7

the end of the six-and-a-half-hour hearing, at which additional documentary evidence and testimony from both proponents and opponents of the Developers' petition was presented, the Board of Alderman voted, four-to-three, to approve the petition, as twice amended.

¶13.    On October 10, 2007, the Mayor approved an ordinance (hereinafter "the October 10, 2007, Ordinance") granting the conditional use and variance requested in the petition (as amended).  The October 10, 2007, Ordinance lists the following findings of fact:

1.    The conditional use is in conformity with the city's Comprehensive Plan generally or the Land Use Plan specifically; and with the purpose, intent and applicable standards of the City of Ridgeland Zoning Regulation Ordinance of February 6, 2001 (hereinafter "Ordinance").

2.    The proposed conditional use is designated by the Ordinance as a conditional use in the zoning district in which the property in question is located.

3.    The proposed conditional use will comply with all applicable regulations in the zoning district in which the property in question is located.  That the building is entirely within a C-4 zone.

4.    The proposed use will comply with all special regulations established by the Ordinance for such conditional use.

5.    The establishment of maintenance of the conditional use is not detrimental to the public health, safety, or general welfare.

6.    The conditional use is located, designed, maintained, and operated to be compatible with the existing or intended character of the zoning district.

7.    The conditional use will not depreciate property values.

8.    The conditional use is not hazardous, detrimental, or disturbing to present surrounding land uses due to noise, glare, smoke, dust, odor, fumes, water pollution, erosion, vibration, electrical interference, or other nuisance.  Concerns have been raised as to the appearance of the building.  As a condition of approval, modifications to the exterior skin of the building are required to bring the building more into conformity with the rest of the Renaissance development.  Final design shall be subject to the architectural review process of the City of Ridgeland.

9.    The conditional use will generate only minimal vehicular traffic on local streets and will not create traffic congestions, unsafe access, or parking needs that will cause inconvenience to the adjoining properties.

8

10. The conditional use is served adequately by essential public services such as streets, police, fire protection, utilities, schools, and parks.
11. The conditional use will not create excessive additional requirements at public cost for public facilities and services and is not detrimental to the economic welfare of the city.
12. The conditional use will preserve and incorporate the site's important natural and scenic features into the development design.
13. The conditional use will cause minimal adverse environmental effects.
14. No conditions imposed on a special use as a result of this ordinance are so unreasonably difficult as to preclude development of the use.
15. No additional information is requirement by the Zoning Administrator or Building Official.

Ridgeland, Miss., Ordinance of the Mayor and Board of Aldermen of the City of Ridgeland, Madison County, Mississippi, Approving and Granting Special Exception and Conditional Use Permit and a Dimensional Variance for Property Located at the Renaissance at Colony Park, City of Ridgeland, Madison County, Mississippi (October 10, 2007) at 4-5.

¶14. The October 10, 2007, Ordinance also states that the following are found and determined:

> . . . [T]he granting of the requested Special Exception and Conditional Use will not adversely affect the public interest.
> . . . [T]he Petitioner has complied with the specific rules and requirements governing individual special uses and [] there has been satisfactory provision and arrangement for the applicable site design related standards of Section 600.09.E of the City of Ridgeland Zoning Regulations Ordinance of February 6, 2001.
> . . . [S]atisfactory provision and arrangement has been made by Petitioner concerning all the requirements found in Section 600.09.K of the City of Ridgeland Zoning Regulations Ordinance of February 6, 2001.
> . . . [T]he conditions precedent to the granting of the Special Exception and Conditional Use Permit in regard to the herein described property as required in Section 600.09 of the City of Ridgeland Zoning Regulations Ordinance of February 6, 2001, exist, and have been satisfied, and the granting of the Special Exception and Conditional Use Permit for the purpose of constructing a thirteen (13) story office building on the property should be granted.

9

*Id.* at 5-6. The Ordinance then goes on to grant the Developers a conditional use permit (special exception) to construct and operate a thirteen-story office building, and a variance "to reduce the required front yard from thirty (30) feet to no less than fifteen (15) feet." *Id.* at 6.

¶15.     On October 19, 2007, the Protestants filed their Notice of Appeal and Intent to File Bill of Exceptions with the Madison County Circuit Court. In the Notice of Appeal, the Protestants explained that they were appealing "Individually and as Landowners, Residents, Taxpayers, and Interested Citizens of the City of Ridgeland, Mississippi, and for and on behalf of those similarly situated persons comprising Z.O.N.E., (Zone Ordinances Need Enforcement)." The Protestants live in residential areas and/or subdivisions located near (approximately one-quarter to one-and-one-half miles away from[4]) the subject property. Collectively, they are residents in residential subdivisions including but not limited to (1) Canterbury, (2) Windrush, (3) Dinsmor, (4) Rolling Meadows, (5) Olde Towne, (6) Cottonwood, and (7) Bridgewater, as well as in non-subdivided areas to the east of the subject property (east of Interstate 55) and toward the center of Ridgeland.

---

[4] The Developers state the following regarding the distance between the subject property and the Protestants' homes:

> The lot of Belinda Boozer, the Protestant who lives closest to the subject property . . . is actually 1,632 feet, or .31 miles, from the 200 Renaissance Building. . . . The existing eight-story 300 Renaissance Building (Cellular South Building), which was constructed pursuant to a Special Exception (Conditional Use Permit) granted in 2005, blocks the view of the 200 Renaissance Building from the Boozer lot. The lot of Mary Bishop, the Protestant who lives the greatest distance from the subject property . . . is 11,086 feet, or 2.10 miles, from the 200 Renaissance Building. . . .

¶16.    The Protestants named only the City of Ridgeland as an appellee, but the Developers

moved to intervene on November 13, 2007, and the circuit court approved the intervention

on August 1, 2008.

¶17.    The Protestants submitted a Bill of Exceptions (unsigned by the Mayor), which was

filed on January 4, 2008.  The Mayor and Board filed a Corrected Bill of Exceptions (signed

by the Mayor) on February 5, 2008.

¶18.    On June 20, 2008, the Developers filed a motion to dismiss the appeal for lack of

standing by the individual Protestants, as well as a motion to dismiss what the Developers

refer to as the class-action and unincorporated-association aspects of the appeal.  The circuit

court orally denied the two motions after conducting a public hearing on August 11, 2008,

and entered a formal Order denying the motions on August 21, 2008.  The trial judge,

anticipating that this matter ultimately would be appealed to this Court, noted that he was

denying the two motions to dismiss so as to avoid the possibility that there might be multiple

appeals to this Court (i.e., to avoid the matter being remanded to him by this Court for a

decision on the merits).

¶19.    The circuit court ultimately entered an Order dated September 17, 2008, and a

Corrected Order dated September 22, 2008, affirming the decision of the Mayor and Board

of Aldermen, which had granted the Developers' requested conditional use and variance.

The circuit court Order found:

> [T]he issues presented by The Bailey Companies['] petition to allow the
> special exception to construct a 13 story office building and a dimensional
> variance to reduce the setback line [are] fairly debatable, and . . . the record

11

contains no evidence that the decision to grant the petition was arbitrary, capricious, discriminatory, illegal or unsupported by substantial evidence, and . . . the decision of the Board should be affirmed. The Mayor and the Board of Aldermen are better situated than an appellate court to determine the zoning needs of their city and where the decision is not clearly arbitrary, capricious, or unsupported by substantial evidence, and the issues fairly debatable, this court declines to substitute its judgment for that of the local governing body.

¶20. On October 16, 2008, the Protestants (now consisting of ten fewer individuals) filed a notice of appeal for the purpose of appealing the circuit court's ruling to this Court. On October 27, 2008, six Bailey Companies filed a notice of cross-appeal in regard to the Order dated August 21, 2008, denying their two motions to dismiss based on standing. The briefs submitted to this Court consist not only of those filed by the appellants/Protestants, appellees/cross-appellants/developers, and appellees/City of Ridgeland, but also two amicus curiae briefs: one from the tenants of the 200 Renaissance building (Horne LLP, Regions Bank, and Butler, Snow, O'Mara, Stevens, & Cannada, PLLC) and one from a group of private citizens and local businesses who support the decision of the City of Ridgeland.

## DISCUSSION

### I. Whether the Protestants Have Standing.

¶21. The Developers argue that the circuit court should have granted their motion to dismiss the appeal for lack of standing by the individual Protestants, and their motion to dismiss the class-action and unincorporated-association aspects of the appeal.

¶22. The Developers argue that the individual Protestants lack standing because none of them owns the subject property, none of them owns land adjacent to or adjoining the subject property, and none of them owns land located within 160 feet of the subject property, the

12

160-foot distance being the distance mentioned in Mississippi Code Section 17-1-17.[5]

Section 17-1-17 provides that, if the owners of twenty percent or more of the lots located within 160 feet of the subject property protest a proposed zoning change, such change shall become effective only upon the favorable vote of three-fifths of the members of the local governing authority who are not required to recuse themselves. Miss. Code. Ann. § 17-1-17 (Rev. 2003). Section 17-1-17 is not applicable to the instant case, and it does not state that owners of lots located more than 160 feet away from the subject property lack standing.

¶23. "'Standing' is a jurisdictional issue which may be raised by any party or the Court at any time." *In the Matter of the Enlargement and Extension of the Municipal Boundaries of the City of Horn Lake*, 822 So. 2d 253, 255 (Miss. 2002) (quoting *City of Madison v. Bryan*, 763 So. 2d 162, 166 (Miss. 2000)). This Court reviews questions of standing *de novo*. *Gartrell v. Gartrell*, 2009 WL 4844377, at *3 (Miss. Dec. 17, 2009).

¶24. In recent cases such as *Burgess v. City of Gulfport* and *Ball v. Mayor and Board of Aldermen of City of Natchez*, this Court has set forth what is required for a party to have standing to bring a civil action:

> It is well settled that "Mississippi's standing requirements are quite liberal." This Court has explained that while federal courts adhere to a stringent definition of standing, limited by Art. 3, § 2 of the United States Constitution to a review of actual cases and controversies, the Mississippi Constitution contains no such restrictive language. Therefore, this Court has been "more permissive in granting standing to parties who seek review of governmental actions." In Mississippi, parties have standing to sue "when

---

[5] Cross-appellants also explain that the "160-foot distance appears in the notice provisions of the zoning ordinances of most Mississippi municipalities, including the City of Ridgeland."

13

they assert a colorable interest in the subject matter of the litigation[6] or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law."

*Burgess v. City of Gulfport*, 814 So. 2d 149, 152-53 (Miss. 2002) (quoting *State v. Quitman County*, 807 So. 2d 401, 405 (Miss. 2001)). *See also **Ball v. Mayor and Bd. of Aldermen of City of Natchez***, 983 So. 2d 295, 301 (Miss. 2008) (citing *Burgess*, 814 So. 2d at 150-53). Further, for a plaintiff to establish standing on grounds of experiencing an adverse effect from the conduct of the defendant/appellee, the adverse effect experienced must be different from the adverse effect experienced by the general public. *Burgess*, 814 So. 2d at 153. *See also **City of Madison v. Bryan***, 763 So. 2d 162, 166 (Miss. 2000).

¶25.    In *Burgess* – a case in which City of Gulfport residents challenged the Gulfport City Council's decision to accept the recommendation of the Planning Commission to issue a tree-removal permit to condominium developers – this Court explained:

> We must determine whether the residents have asserted a colorable interest in the subject matter of the litigation or experienced an adverse effect different from the general public. They clearly do not own the property in question. Neither have they alleged that they own the land around the property in question, or that the land has been affected in an adverse manner. . . . Miss. Code Ann. § 11-51-75 [the statute pursuant to which the plaintiffs in *Burgess* and in the instant case appeal] outlines the proper procedure to appeal when someone is aggrieved by a decision of a municipality. It does not in any way confer standing. The residents do not have a colorable interest in the subject matter of the litigation. Neither have they experienced adverse effects different from the general public. Further, the mere fact that they reside in the City is not sufficient to confer standing. They, therefore, have no standing.

---

6 This Court has noted that "'[c]olorable,' when used to describe a claim or action, means 'appearing to be true, valid, or right.'" *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 827 n.13 (Miss. 2009).

14

*Burgess*, 814 So. 2d at 150, 153.

¶26. Applying the same standing requirements to the facts in *Ball* – a case in which City of Natchez residents brought challenges regarding the City's sale of surplus land to a condominium developer – this Court found that the appellants did have standing. *Ball*, 983 So. 2d at 297-98, 301. The *Ball* court reasoned that standing existed because: "the appellants were property owners in the City"; "their property was located near the [subject property]"; and they "alleged that the [development] project would adversely impact their properties." *Id.* at 301.

¶27. The facts in the instant case are more similar to the facts in *Ball* than those in *Burgess*, in that the Protestants own property in the City of Ridgeland; their property is located near the subject property (200 Renaissance); and they allege that the 200 Renaissance development will adversely impact them, their properties, and their use and enjoyment of their properties. Further, the 200 Renaissance development will impact the Protestants and other residents who live near 200 Renaissance in a different manner than it will affect other Ridgeland residents and the general public. The Protestants claim that "the 200 Renaissance Development constitutes an enormous use/enjoyment and aesthetic impediment to the [Protestants'] views from their home, as well as a material encroachment upon their residential privacy." They contend that the negative impact of the height and "after-dark, light-pollution" of the Cellular South building, located at 300 Renaissance (situated on property bordering the 200 Renaissance property to the southwest) "will be materially worsened by 200 Renaissance at a height of 80.6 feet taller than 300 Renaissance." In

15

addition to the alleged impact from the height of and light from 200 Renaissance, the Protestants contend that their "means of ingress and egress to their homes will be impeded significantly by increased traffic to be associated with the 200 Renaissance Development alone." The Protestants also assert that the construction of the 200 Renaissance building will depreciate their homes' property values. Thus, as in **Ball**, the Protestants in the instant case own property near the subject property and allege that the development of the subject property would adversely impact their properties. *See* **id.** Therefore, the Protestants have a colorable interest in the subject matter of the litigation and standing to challenge the conditional use permit regarding the height of the building.

¶28. However, the Protestants do *not* have standing to challenge the variance for the setback requirement, as it is a minor variance, and it regards a part of the subject property bordering another property owned by an entity affiliated with the Developers. Such a variance will not have an adverse effect on the Protestants, and certainly not in a manner different or to a different degree than it will affect the general public. In support of this conclusion, the Developers argue that "[t]he Variance provisions were designed to protect adjacent lots in traditional neighborhoods, not to dictate the internal dimensions of carefully designed master developments like Renaissance at Colony Park." Furthermore, at the hearing before the Mayor and Board of Aldermen, the Ridgeland City Attorney advised that the requested setback variance is one that, under the City's Ordinance, can even be granted administratively. *Cf.* **Drews v. City of Hattiesburg**, 904 So. 2d 138, 141 (Miss. 2005) ("No conceptual problems arise when the variance is granted to authorize minor departures from

16

the terms of the ordinance; e.g., to permit a landowner to place the structure on his lot nearer the lot line than is permitted by the set-back or side-yard requirements.").

¶29. The Developers also argue that the Protestants, by seeking to appeal "for and on behalf of those similarly situated persons comprising Z.O.N.E., (Zoning Ordinances Need Enforcement)," are seeking an appeal in a manner not authorized by Mississippi law in that Rule 23 of the Mississippi Rules of Civil Procedure expressly omits class actions, and Rule 23.2 expressly omits actions related to unincorporated associations, like Z.O.N.E.. Miss. R. Civ. P. 23, 23.2.

¶30. It is true that Mississippi law does not permit class-action claims (*see American Bankers Ins. Co. of Florida v. Booth*, 830 So. 2d 1205, 1212 (Miss. 2002)); however, it was not error for the trial court not to dismiss what the Developers label the "class action aspect of the appeal," because this Court previously has allowed organizations of homeowners to appeal in zoning disputes. *See Woodland Hills Conservation Ass'n v. City of Jackson*, 443 So. 2d 1173, 1175, 1177 (Miss. 1983); *Miss. Manufactured Hous. Ass'n v. Bd. of Aldermen of City of Canton*, 870 So. 2d 1189, 1192-94 (Miss. 2004). While Protestants should have made Z.O.N.E. an appellant rather than suing "for and on behalf of those similarly situated persons comprising Z.O.N.E.," we agree with the Protestants' argument that "[t]he associational aspect of this appeal does not violate class action principles so as to be inconsistent with the provisions of the Miss. R. Civ. P., nor does it do more than reiterate the [alleged] individually-established rights of each Appellant herein."

17

**II. Whether the City of Ridgeland's decision to issue the October 10, 2007, Ordinance was arbitrary, capricious and/or unsupported by substantial evidence.**

¶31.　　The Protestants argue that the circuit court erred in affirming the decision of the City of Ridgeland to issue the October 10, 2007, Ordinance. They claim that "the Ordinance was beyond the power of Ridgeland to make, and/or illegal and in violation of statutory, common law and Ridgeland's own ordinances, and violated both statutory and substantive rights of the Appellants by the actions of the Board on October 10 and 11, 2007." The Protestants further contend that the circuit court Orders, affirming the decisions of the City of Ridgeland, allowed unlawful "spot zoning." Lastly, they argue that the decisions of the City of Ridgeland were "result-driven Decisions, performed without adherence to required and mandatory administrative procedures and substantive requirements/criteria, and based upon inappropriate factors . . . ."

¶32.　　The Developers argue that the City of Ridgeland's decision was supported by substantial evidence, was not arbitrary nor capricious, and should not be reversed on appeal.

¶33.　　The standard of review in zoning decisions is well-established. In *Drews v. City of Hattiesburg*, a case reviewing grants of variances, this Court explained:

> The standard of review in zoning cases is whether the action of the board or commission was arbitrary or capricious and whether it was supported by substantial evidence. Thus, zoning decisions will not be set aside unless clearly shown to be arbitrary, capricious, discriminatory, illegal or without substantial evidentiary basis. There is a presumption of validity of a governing body's enactment or amendment of a zoning ordinance and the burden of proof is on the party asserting invalidity. Where the point at issue is "fairly debatable," we will not disturb the zoning authority's action.

18

*Drews v. City of Hattiesburg*, 904 So. 2d 138, 140 (Miss. 2005) (citations omitted). *See also*

*Mayor & Bd. of Aldermen, City of Clinton v. Welch*, 888 So. 2d 416, 419 (Miss. 2004)

("[A]ctions of a deliberative body such as the Mayor and Board of Aldermen will not be set

aside unless found to be arbitrary and capricious."). We have further explained:

> Unlike decisions to zone or re-zone, which are legislative in nature, decisions on request for special exceptions are adjudicative, and a reviewing court subjects such decisions to the same standard as is applied to administrative agency adjudicative decisions. Therefore, this appeal is subject to the following standard of review: the decision of an administrative agency is not to be disturbed unless the agency order was unsupported by substantial evidence; was arbitrary or capricious; was beyond the agency's scope or powers; or violated the constitutional or statutory rights of the aggrieved party.

*Mayor & Bd. of Aldermen, City of Town of Prentiss v. Jefferson Davis County*, 874 So. 2d

962, 964 (Miss. 2004) (internal citations omitted). We have defined an act as "arbitrary"

when "it is not done according to reason or judgment, but depending on the will alone."

*Burks v. Amite County Sch. Dist.*, 708 So. 2d 1366, 1370 (Miss. 1998). "Capricious" has

been defined as "any act done without reason, in a whimsical manner, implying either a lack

of understanding of or a disregard for the surrounding facts and settled controlling

principles." *Id.* "Substantial evidence" has been defined as "'such relevant evidence as

reasonable minds might accept as adequate to support a conclusion' or to put it simply, more

than a 'mere scintilla' of evidence." *Hooks v. George County*, 748 So. 2d 678, 680 (Miss

1999) (quoting *Johnson v. Ferguson*, 435 So. 2d 1191, 1195 (Miss. 1983)).

¶34.    As explained above, the Protestants have standing regarding the conditional use

permit to build higher than four stories, but do not have standing regarding the variance to

encroach the setback requirement. Therefore, the remainder of the discussion will focus on the issuance of conditional use permits and the building's height and size, not on variances or the setback requirement.

¶35. Under Ridgeland's Ordinance, the terms "conditional use" and "special exception" are synonymous and are defined in Article II, Section 21 as:

> A land use that would not generally be appropriate in a particular zoning district, but which, with certain restrictions or conditions, would, *in the judgment of the Mayor and Board of Aldermen*, promote the public health, safety, morals, or general welfare of the City and would not adversely affect *adjacent* properties. A permit (building permit or change of use permit) granted by the Mayor and Board of Aldermen for the initiation of a conditional use (with the necessary restrictions included) will not change the zoning of the property involved and will allow such use to continue as long as the specific use granted by the conditional use remains the same.

Ridgeland, Miss., The Zoning Ordinance of the City of Ridgeland, Mississippi (Feb. 6, 2001) at 9 (emphasis added). Thus, as the Developers explain, a conditional use or special exception is effectively a license, granted by the Mayor and Board, in its discretion, to allow a specified use of land within a given zoning district, so long as it is of benefit to the city and does not adversely affect adjacent landowners.

¶36. Ridgeland's Ordinance provides for seven commercial zoning classifications. As a general principle, the level and degree of commercialization increase in the following progression: C-1 Restricted Commercial, C-2 General Commercial, C-2A General Commercial (arterial streets), C-3 Convenience Commercial, C-4 Highway Commercial, and C-5 High Intensity Commercial. *Id.* at 46. Under each zoning classification, the Ordinance specifies (1) the type of land use allowed in that district, (2) the types of conditional uses that

20

may be permitted, and (3) the dimensional requirements within that district. *See, e.g.*, *id.* at 108-110.

¶37. Ridgeland's Ordinance explains that the land uses permitted under a C-3 Commercial Convenience District are any uses permitted outright in the C-2 General Commercial district, which include those permitted outright in the C-1 Restricted Commercial District, among which are business and professional offices of all types. *Id.* at 102; Ridgeland, Miss., Ordinance Amending Sections 440.01, 440.02, and 440.03 of the Official Zoning Ordinance of the City of Ridgeland, Mississippi (Jan. 16, 2007) at 2. As explained above, no part of the 200 Renaissance building will be located in the C-3 portion of the subject property. The development on the C-3 portion will consist of a driveway and temporary visitor parking.

¶38. Ridgeland's Ordinance provides, in Article IV, Section 440.02, that in a C-4 Highway Commercial District, land uses permitted outright are professional offices, as well as public streets and highways. Ridgeland, Miss., Ordinance Amending Sections 440.01, 440.02, and 440.03 of the Official Zoning Ordinance of the City of Ridgeland, Mississippi (Jan. 16, 2007) at 2. In addition, however, Article IV, Section 440.03 lists conditional uses (special exceptions) that may be approved in C-4 districts: public or quasi-public facilities; automobile, truck and other vehicle sales and services; yard and garden centers; large, fully enclosed sports and recreational facilities; commercial kennels; any use permitted outright in C-1 Restricted Commercial District, C-2 General Commercial District, or C-3 Convenience Commercial District; conditional uses listed under the C-3 Commercial District

21

regulations; and *buildings in excess of forty-eight feet or four stories*. *Id.* at 2-3 (emphasis added).

***A. Whether the City of Ridgeland violated its ordinance's Maximum Building Height dimensional requirement.***

¶39.    The Protestants argue that the October 10, 2007, Ordinance betrayed Ridgeland's residential residents and "constituted arbitrary, capricious and unreasonable actions in violation of the ordinances and statutory and common law." The Protestants state that, at the time the City of Ridgeland was reviewing the Developers' petition, seventy-two of the seventy-three commercial or office buildings located on or adjacent to Highland Colony Parkway in Ridgeland city limits were four stories or less. The Protestants argue that "the City allowed the subjective desire of the Developers/appellees to override the objective, established protective zoning ordinances that had heretofore allowed commercial uses and residential uses to peacefully coexist."

¶40.    First, as explained above, the Developers' petition, as amended, sought a conditional use permit to build an office building within a C-4 district in excess of the usual height limitation of forty-eight feet or four stories set out in Ridgeland's Zoning Ordinance. As also explained above, Section 440.03 of Ridgeland's Ordinance specially allows conditional use permits for the construction of buildings in excess of forty-eight feet or four stories. *Id.* at 3.

¶41.    Second, the record reveals that the petition was supported by evidence that the 200 Renaissance building would benefit the City and would not adversely affect adjacent

22

landowners. At the hearings before both the Zoning Board and the Mayor and Board of Aldermen, the Developers presented expert testimony regarding the building's architecture, the building's placement and its effect on homeowner privacy, the economic benefits the building would have on the City, the effect the building would have on residential property values, and the effect the building would have on traffic. The Developers also presented studies prepared by their experts and other supporting documents. At the hearing before the Mayor and Board of Aldermen, comments from residents both for and against the petition were heard, recommendations from City personnel responsible for interpreting and administering Ridgeland's Ordinance were heard, and arguments from both parties' lawyers, as well as the City's counsel, were heard. In addition, the Mayor and Board of Aldermen were informed that the owners of properties adjacent to the subject property supported the conditional use to allow construction of the 200 Renaissance building to a height of thirteen stories. As explained above, the Mayor then approved the October 10, 2007, Ordinance, which sets forth specific findings as to why the conditional use permit was warranted and appropriate.

¶42. Therefore, the City of Ridgeland's decision to approve the Developers' request for a conditional use permit regarding the height of the 200 Renaissance building was not arbitrary or capricious and was supported by substantial evidence.

¶43. As already noted, we will not address the Protestants' arguments alleging that the City acted arbitrarily, capriciously, and unreasonably in granting the variance regarding the setback requirement, because the Protestants do not have standing to challenge the setback

23

variance. Further, the Protestants are in error to the extent that they intermingle and confuse the zoning action of granting a conditional use permit (special exception) with the zoning action of granting a variance, as the requirements for the granting of these two separate zoning actions differ significantly.

***B. Whether the City of Ridgeland erred in not explicitly granting permission to the Developers in the October 10, 2007, Ordinance to depart from the Ridgeland Ordinance's Section 440.04 Maximum Floor Area Ratio and Maximum Buildable Area dimensional requirements.***

¶44. The Protestants explain that the Developers did not request a variance from the Ridgeland Ordinance's Section 440.04.D "Maximum Buildable Area" (MBA) requirement nor from the Section 440.04.E "Maximum Floor Area Ratio (FAR)."[7] In addition, the October 10, 2007, Ordinance did not specify that the Developers were being granted

---

[7] Under Section 440, "Highway Commercial District (C-4)," Section 440.04 states:

**DIMENSIONAL REQUIREMENTS:**
    **A. Maximum Building Height:** 48 feet or four stories.
    **B. Minimum Lot Area:** 10,000 square feet.
    **C. Minimum Lot Width:** 100 feet.
    ***D. Maximum Buildable Area:*** The aggregate square footage of all buildings shall not exceed twenty-five percent (25%) of the gross lot area.
    ***E. Maximum Floor Area Ration (FAR):*** 0.5. (Example: 20,000 square feet lot – 100 feet x 200 feet – with a building, 5,000 square feet on each of four floors: total square footage = 20,000 square feet divided by 20,000 square feet = 1.0 FAR).
    **F. Minimum Yards:**
    . . .
    **G. Internal Building Space:** . . . .

Ridgeland, Miss., The Zoning Ordinance of the City of Ridgeland, Mississippi (Feb. 6, 2001) (emphasis added).

24

variances regarding the MBA and FAR. The Protestants argue that the 200 Renaissance building and parking facility will exceed the MBA and FAR, and are thus unlawful.

¶45. In the Developers' second amendment to their petition, they explain that, before filing their original petition, they inquired of the Ridgeland officials responsible for interpreting Ridgeland's Ordinance regarding the correct interpretation of Section 440.04.E. The Developers explain that the City officials informed them that Section 400.04.E was not applicable to the proposed office building, as the building was designed to exceed four stories.

¶46. However, during the Zoning Board hearing (which took place following the filing of the original petition), the Protestants argued that the thirteen-story 200 Renaissance building would violate Section 440.04.E. Therefore, in the Developers' second amendment to their petition, they requested "clarification and/or other relief in regard to Section 440.04.E" (arguing that they reserved the right to make such a request when they stated in their original petition that "Petitioners request such other and general relief as to which they may be entitled").

¶47. The Developers' second amendment to their petition went on to argue that the FAR of 0.5 set forth in Section 440.04.E applies only to a building having a height of four stories or less, and that Section 440.04.E thus does not apply to the proposed 200 Renaissance building. The second amendment to the petition requested that the Mayor and Board of Aldermen, with the advice of the Director of Community Development and the City Attorney, confirm this interpretation.

25

¶48. Alternatively, the second amendment to the petition requested that the Mayor and Board of Aldermen determine that the FAR is calculated by dividing the number of square feet in the proposed building by the number of square feet not in the subject property, but in all of Renaissance at Colony Park, since "the proposed 200 Renaissance Building is one part of Renaissance at Colony Park, as an integrated, mixed use development containing retail stores, restaurants, and other commercial facilities in Renaissance Shopping Center . . . ." Using the number of square feet in all of Renaissance at Colony Park as the denominator of the equation would make the FAR less than 0.5.

¶49. As an alternative to finding that Section 440.04.E does not apply, and an alternative to using the square footage of Renaissance at Colony Park as the denominator in calculating the FAR, the second amendment to the petition requested that the Mayor and Board of Aldermen grant the Developers a variance from the requirements of Section 440.04.E.

¶50. The City of Ridgeland's interpretation of Ridgeland's Ordinance – finding that the FAR of .05 does not apply to a building greater than four stories – should be afforded great deference, if reasonable. This Court has held that, "[i]n construing a zoning ordinance, unless manifestly unreasonable, great weight should be given to the construction placed upon the words by the local authorities." *Columbus & Greenville Ry. Co. v. Scales*, 578 So. 2d 275, 279 (Miss. 1991). Furthermore, Section 600.07 of Ridgeland's Ordinance provides that "[t]he Mayor and Board of Aldermen of the City of Ridgeland shall have the final authority with regard to all matters involving this Zoning Ordinance," including "[a]cting upon all

26

applications for dimensional variances and special exceptions (conditional use permits)" and

"[a]ccepting, rejecting, or conditionally approving site plans . . . or development plans."

¶51.    The City's interpretation is reasonable.   First, as explained above, one of the specifically enumerated conditional uses in a C-4 zoning district is to build a building in excess of forty-eight feet or four stories.  It is reasonable to conclude that the allowance of a conditional use for one dimensional criterion affects the other dimensional criteria.  The Developers make a compelling argument that it would be illogical to require the builder of a thirteen-story building to adhere to the FAR and MBA.  They explain that granting a conditional use for height but strictly enforcing the FAR and MBA would "hamstring the design of any building in Ridgeland in excess of four stories to a slender, toothpick-like, unattractive, non-functional building."[8]

---

[8] The Developers discuss how the FAR is calculated and then offer an example illustrating why granting a conditional use for height but strictly enforcing the FAR and MBA would be unreasonable:

> [T]he example in Article IV, Section 440.04.E, illustrating how the FAR is to be calculated within a C-4 district, assumes a building of 4 stories:
> **_Maximum Floor Area Ration (FAR):_** 0.5. (Example: 20,000 square feet lot – 100 feet x 200 feet – with a building, 5,000 square feet on each of four floors: total square footage = 20,000 square feet divided by 20,000 square feet = 1.0 FAR).
> This example obviously exceeds the FAR permitted.  To bring a building into compliance, one would have to cut in half the square footage of a 4 story building to 2,500 square feet per floor, or a total of 10,000 square feet (10,000 sq. feet [building] /20,000 sq. feet [lot] = 0.5 FAR).  What then would be required in order to build a 5 story building? 2,000 square feet per floor.  (2,000 sq. feet x 5 stories = 10,000 sq. feet / 20,000 = 0.5 FAR).  A six story building?  1,666 square feet per floor.  (1,666 sq. feet x 6 stories = 10,000 sq. feet / 20,000 = 0.5 FAR.[)]  Twelve stories?  Half it again to 833 square feet per floor (833 square feet x 12 = 10,000 sq. feet / 20,000 = 0.5 FAR).

¶52. Because the City of Ridgeland's interpretation of Ridgeland's Ordinance, finding that Section 440.04's FAR and MBA do not apply to a building greater than four stories, is reasonable, and because a local authority's reasonable interpretation of a zoning ordinance should be afforded great deference, we find that the City of Ridgeland did not err by not explicitly granting permission to the Developers in the October 10, 2007, Ordinance to depart from Ridgeland Ordinance's Section 440.04's MBA and FAR dimensional requirements.

¶53. The Protestants also argue that the Mayor and Board were in error to grant the conditional use permit because Section 600.09.D requires that, before granting a conditional use, the Mayor and Board of Aldermen must find that "[t]he proposed use will comply with all applicable regulations in the zoning district in which the property in question is located." Ridgeland, Miss., The Zoning Ordinance of the City of Ridgeland, Mississippi (Feb. 6, 2001) at 143. The Protestants argue that the development of 200 Renaissance does not comply with all applicable regulations in either the C-4 or C-3 zoning district because the building and parking garage will exceed the MBA and the FAR. As explained above, it was not unreasonable for the City of Ridgeland to interpret its ordinance as not requiring adherence to Section 440.04.D's FAR and Section 440.04.E's MBA when a conditional use permit regarding height had been granted. Thus, failure to meet those Sections' FAR and MBA requirements does not mean that the development fails to comply with all applicable regulations in the zoning district.

---

With these numbers in mind, which construction of the ordinance is more reasonable? . . .

¶54. Lastly, any arguments the Protestants make alleging that the Developers failed to adhere to parking requirements and should have been required to seek a variance to alter those requirements are without merit. Article III, Section 37.02.B.1(d) of Ridgeland's Ordinance, which addresses off-street parking, requires that business and professional offices (other than physicians or dentists) allot one parking space for each 300 square feet of gross floor area. *Id.* at 36. The Developers have met this requirement, constructing a number of parking spaces (1,068) that actually exceeds the number required under Section 37.02.B.1(d).[9]

***C. Whether, in granting the October 10, 2007, Ordinance, the City of Ridgeland engaged in illegal "spot zoning" – i.e., whether the City of Ridgeland allowed through the granting***

---

[9] The Developers explain in detail why they did not seek a variance regarding parking and that they have met all parking requirements under Ridgeland's Ordinance:

> As approved by the Architectural Review Board on November 27, 2007, and by the Mayor and Board on December 4, 2007, 200 Renaissance will have 1,068 parking spaces and the gross floor area of the building, as determined by Alan Hart, Director of Community Development, is 292,097 square feet. The city interprets the Zoning Ordinance to exclude elevator shafts, stairwells, mechanical rooms, electrical rooms and other similar spaces which are not devoted to office space when calculating the gross floor area of a building. Taking the correct figures into consideration, Section 37.02.B of the Zoning Ordinance only requires that 200 Renaissance have 974 parking spaces available (292,097/300). Thus, the number of parking spaces that 200 Renaissance will have once constructed actually *exceeds* the number required by the Zoning Ordinance.

The Developers also note that, after the Protestants made the same arguments regarding parking at the hearing before the Mayor and Board of Alderman, the Director of Community Development responded that, since the Developers are not requesting a variance from the parking requirements, they are expected to meet them, and if the Developers are looking to depart from the parking requirements, that would come up at the time of the architectural review of the site plan. Lastly, the Developers argue, the Mayor and Board of Aldermen's approval of the petition evidences that the Mayor and Board agree that 200 Renaissance will have the required number of parking spaces.

***of the conditional use permit relief that may only properly be allowed, if at all, through the formal rezoning process.***

¶55. The Protestants argue that the Developers "elected to request through **'*variances*'** and **'*special exceptions/conditional use(s)*'** the forms of relief which may only be sought or allowed through the formal ***rezoning*** process" and "thereby sought to achieve a **'*spot rezoning.*'**" (Emphasis in original.) The Protestants cite ***Drews v. City of Hattiesburg***, 904 So. 2d 138 (Miss. 2005), as an example of when the granting of *variances* amounts to illegal "spot zoning," and claim that the instant facts are similar to the facts in ***Drews***.

¶56. As noted, the Protestants do not have standing to challenge the setback variance, and furthermore, the Protestants are in error to the extent that they confuse the zoning action of granting a conditional use permit (special exception) with the zoning action of granting a variance. Therefore, ***Drews*** and that case's discussion of variances is irrelevant to the questions that this Court must answer regarding the requested conditional use.

¶57. Furthermore, it is difficult to argue that the granting of a conditional use specifically provided for in the City's Ordinance (i.e., granting a conditional use to build in excess of forty-eight feet or four stories in a C-4 district) amounts to illegal spot zoning. This is especially true in the instant case where the approval of the 200 Renaissance development was in accordance with the Comprehensive Plan of Ridgeland. *See* footnote 2; ***Ridgewood Land Co., Inc. v. Simmons***, 137 So. 2d 532, 538 (Miss. 1962) (explaining that the zoning action at issue was not spot-zoning because "it is not spot zoning if it is enacted in accordance with a comprehensive plan."); ***McWaters v. City of Biloxi***, 591 So. 2d 824, 829

30

(Miss. 1991) ("[T]he rezoning action taken by the city council was not "spot zoning" inasmuch as the rezoning appears to be in harmony with the comprehensive zoning plan of the city of Biloxi with respect to the subject property."). In addition, Ridgeland Ordinance's definition of conditional use (quoted above) states that the granting of a conditional use "will not change the zoning of the property involved."

¶58. Moreover, the 200 Renaissance development is located in, and surrounded by, commercial districts. As explained, the 200 Renaissance building is situated on land located along Interstate Highway 55 in a C-4 Highway Commercial District. The land across Interstate Highway 55 (across from and to the east of 200 Renaissance) is zoned primarily C-4 Highway Commercial District, with a small portion zoned C-2 General Commercial. The remainder of Renaissance at Colony Park, of which 200 Renaissance is a part, is zoned C-2 General Commercial District or C-3 Convenience Commercial District. Other property along both sides of Highland Colony Parkway (which is located to the west of 200 Renaissance), including the development on the west side of Highland Colony Parkway known as Township at Colony Park, is zoned C-2 General Commercial District. As established above, no residential property sits adjacent to the subject property; the closest residential area, located to the west of 200 Renaissance, is separated from 200 Renaissance by commercial property on the west side of Highland Colony Parkway, by Highland Colony Parkway itself, and by retail facilities and office buildings of Renaissance at Colony Park, including the eight-story Cellular South building.

¶59. Therefore, the Protestant's allegations of "spot zoning" are without merit.

31

***D. Whether the City of Ridgeland failed to comply with the Ridgeland Ordinance's procedural requirements, and if so, whether the City's failure to comply constitutes reversible error.***

¶60.   The Protestants argue that it was reversible error for the Mayor and Board of Alderman to act without first having received recommendations regarding the petition from the Planning and Zoning Committee and the Zoning Administrator.  The Protestants point out that Ridgeland's Ordinance, Section 600.09.B.1 states:

> All applications for special exceptions must first be submitted to the Zoning Administrator, who reviews them in light of all standards in Section 600.09-D and 600.10-E.  Afterwards, the Zoning Administrator forwards the application and his recommendations to the Planning Commission and the Zoning Board for their review, comments, and recommendations.

Ridgeland's Zoning Administrator, the Protestants explain, never presented a recommendation to the Planning Commission and Zoning Board prior to the September 10, 2007, Zoning Board hearing.

¶61.   Moreover, Section 600.09.B.4 states that, "After completing their reviews, the Planning Commission and Zoning Board then forward the application and their recommendations to the Mayor and Board of Aldermen."  Ridgeland, Miss., The Zoning Ordinance of the City of Ridgeland, Mississippi (Feb. 6, 2001) at 142.  In the instant case, at the Zoning Board hearing, neither motions to deny nor approve the petition were seconded by a board member, and thus the Zoning Board determined it was at an impasse and explained that all the information heard and gathered at the Zoning Board hearing would "go to the Mayor and Board of Aldermen as a recommendation."  The Protestants contend that this did not constitute a "recommendation" as required by Section 600.09.B.4.  They argue

32

that "all decisions in this matter were those of the Mayor and Board of Aldermen of the City of Ridgeland alone and were made in the absence of any factual findings, determinations, or recommendations – a result which is contrary to the procedural and substantive requirements of Ridgeland's own ordinances."

¶62. While it is true that Section 600.09 was not strictly followed, the Developers and the City of Ridgeland substantially complied with the procedural prerequisites for the conditional use permit. First, the petition *was* submitted to and reviewed by the Zoning Administrator, and the Zoning Administrator found that "the Amended Petition meets the requirements of Sections 600.09-D and 600.10-E and recommend[ed] that the Mayor and Board of Alderman consider the Petition upon completion of the Public Hearing Process." In addition, the Director of Community Development, the Zoning Administrator's superior, testified before the Mayor and Board. After analyzing the proposed development under several tests (described as the "Sustainable Community Model," "Smart Growth Principles," and the objectives of Ridgeland's forthcoming Master Plan), the Director of Development testified that he "recommended that the Mayor and Board of Aldermen approve the concept as presented by the Petitioner including the necessary conditional use permit and associated dimensional relief." Second, the Mayor and Board of Alderman not only possessed the information forwarded to them by the Zoning Board, but also conducted their own lengthy public hearing, in which they heard testimony from proponents and opponents of the petition.

33

After considering all of the evidence, they issued the October 10, 2007, Ordinance, which addressed each of the fifteen General Standards set forth in Section 600.09.D.[10]

¶63. Furthermore, in past cases in which this Court considered protestants' allegations of procedural deficiencies in proceedings before zoning authorities, this Court held that, with two exceptions,[11] "it is the City which is vested with final authority for determining whether its procedural requisites have been met or, if it pleases, waiving them." **Thrash v. Mayor and Comm'rs of City of Jackson**, 498 So. 2d 801, 807 (Miss. 1986).[12] In the instant case, the City of Ridgeland's attorney advised the Mayor and Board that caselaw permitted them to deal with the procedural issues as they chose, and that the issue regarding the Zoning Administrator's lack of recommendation was remedied when the Zoning Administrator, as

---

[10] The City of Ridgeland's brief to this Court explains:

> This case involves a matter to which careful attention has been given. . . . The consideration of the factual and legal issues involved was anything but routine. Unusual time and effort was devoted to public hearings allowing all interested parties to have an opportunity to be heard on relevant issues.
> The City's elected officials, on both sides of the issue, spent countless hours reviewing the questions involved, hearing the evidence, considering reasonable interpretations of the City's ordinances and finally voting. In the end the elected officials determined that the use should be granted.

[11] The two exceptions to a municipal authority's ability to waive the procedural requirements of a zoning ordinance are instances where the municipal zoning authorities: 1) transgress some important limitation or procedure imposed by state law; or 2) contravene a citizen's due process rights. **Thrash v. Mayor and Comm'rs of City of Jackson**, 498 So. 2d 801, 807 (Miss. 1986).

[12] Although **Thrash** involved a rezoning decision (i.e., a legislative decision) as opposed to a decision regarding a conditional use (i.e., an adjudicative decision), we find that, in considering a petition for a conditional use permit, a City is similarly vested with the authority to determine whether its procedural requirements have been met, or if they should be waived.

34

well as her superior, the Director of Community Development, provided their recommendations to the Mayor and Board of Aldermen.[13]

¶64. Thus, the City of Ridgeland substantially complied with the procedural requirements set out in Ridgeland's Ordinance; the City of Ridgeland had the discretion to waive certain specific procedural requirements; and any departures from the exact procedural requirements set forth in Ridgeland's Ordinance were, in this instance, not reversible error.

## CONCLUSION

¶65. For the foregoing reasons, we find that: 1) the Protestants had standing to challenge the issuance of the conditional use allowing construction of the thirteen-story 200 Renaissance building (but did not have standing to challenge the variance allowing encroachment into the setback requirement); and 2) the City of Ridgeland's approval of the proposed 200 Renaissance development and issuance of the October 10, 2007, Ordinance was neither arbitrary nor capricious and was supported by substantial evidence. Therefore, we affirm the circuit court's Orders finding that: 1) the Developers' motions to dismiss for lack of standing were not well-taken; and 2) the decision of the Mayor and Board of Aldermen granting the Developers' requested conditional use and variance was not arbitrary, capricious, or unsupported by substantial evidence.

---

[13] At the hearing before the Mayor and Board of Aldermen, counsel for the Developers stated: "It's been suggested that somehow terrible errors were made when the director of community development did not testify before the Zoning Board. It is my understanding that traditionally in the city of Ridgeland, the director of community development does not make a recommendation at that level. He makes a recommendation here before the Mayor and Board of Aldermen . . . ."

**¶66. ON DIRECT-APPEAL AND CROSS-APPEAL; AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**